Rapallo, J.
 

 The appellants in these actions claim that the act of the legislature authorizing the tax for the collection of which their property was levied upon, was unconstitutional, and that, therefore, the trustees who issued the ' warrant, and the collector who attempted to execute it were guilty of a trespass.
 

 
 *611
 
 The act in question was passed March 19, 1867 (Laws of 1867, chap. 96), and empowTered the trustees of the village of Brockport to raise the money necessary to carry into effect certain proposals which they had made pursuant to chapter 466 of the Laws of 1866, for the establishment of a normal and training school in that village, which proposals had been accepted, and to that end to levy and collect taxes from time to time, as they might deem necessary, but not exceeding §50,000 in the aggregate.
 

 The first alleged ground of objection to the validity of this act is, that the institution for which the money was to be raised was not a local one, but was for the equal benefit of the whole State, and that the assessment ought to be imposed with equality upon all property within the State.
 

 There can be no doubt of the correctness of the general proposition, that the principle upon which taxation is founded is that the tax-payer is supposed to receive just compensation in the benefits conferred by government, and in the proper application of the tax; and that in the exercise of the taxing power the legislature ought, as nearly as practicable, to apportion the tax according to the benefit which each taxpayer is supposed to receive from the object upon which the tax is expended. But the power of apportionment is included in the power to impose taxes, and is vested in the legislature ; and in the absence of any constitutional restraint, the exercise by it of such power of apportionment cannot be reviewed by the courts.
 
 (The People
 
 v.
 
 The Mayor, etc.,
 
 4 Comst., 419.) The constitutions of some of our sister States contain special provisions designed to guard against an inequitable exercise of this power, and to secure equality in the distribution of the public burdens. A violation of any such provisions would undoubtedly be cognizable by the courts. But in this State such restraints have not been deemed necessary, and the people have been content to leave to the wisdom and justice of the legislature, unrestrained by specific regulations, the subject of determining how the public burdens shall be apportioned among them.
 
 (Prov. Bank
 
 v.
 
 *612
 

 Billings,
 
 4 Peters, 514, 561, 563; 4 Coms., 426, 427, 429 ;
 
 Thomas
 
 v.
 
 Leland,
 
 24 Wend., 65;
 
 Town of Guilford
 
 v.
 
 Supervisors of Chenango,
 
 13 N. Y., 143;
 
 Bomb of Rome
 
 v.
 
 Village of Rome,
 
 18 N. Y., 38;
 
 Brewster
 
 v. City
 
 of Syracuse,
 
 19 N. Y., 116.)
 

 To undertake to review the action of the legislature in this respect, and to enforce by judicial power, absolute equality of taxation, or to declare a law unconstitutional on the ground that a locality is taxed for what might seem to the court more than its just proportion of an expenditure for a public purpose, would be a usurpation of the province of the legislature. (4 Comst., 426;
 
 Darlington
 
 v.
 
 The Mayor,
 
 31 N. Y., 190.)
 

 It would be going too far to deny that the provisions of the Constitution, which declare that no person shall be deprived of property without due process of law, and that private property shall not be taken for public use without just compensation, would afford protection to the citizen against impositions made nominally in the form of taxes, but which were in fact forced levies upon individuals or confiscations of private property; as for instance, if the general expenses of the government of the State, or of one of its municipal divisions, should be levied upon the property of an individual or set of individuals, or perhaps upon a particular district. Cases of this description might be imagined in which an act would fall within the express prohibitions of the Constitution. But to raise the constitutional question would require an extreme case, where no apportionment of the tax with reference to benefit should be attempted, and no discretion on the subject exercised, but one set of individuals or one district should be confessedly and arbitrarily required to pay for benefits conferred upon others who bore no proportion of the burden. Ho such question arises where a tax is imposed upon a particular locality to aid in a public purpose which the legislature may reasonably regard as a benefit to that locality as well as to the State at large. When .the legislature has proceeded upon the ground of such mutual
 
 *613
 
 benefits, and has undertaken to make the apportionment, inequality in the apportionment of the expenses of the undertaking, with reference to the benefits resulting respectively to the State and to the locality, cannot be alleged for the purpose of impugning the validity of the act.
 

 The normal school in question was to be established pursuant to chapter 466 of the Laws of 1866, for the education of teachers for the common schools. The village was, according to the proposals made by the trustees, to furnish the land and buildings required, and to supply furniture to the school to a specified amount. These were to be conveyed to the State and placed under the control and direction of its oifieers, and the school was to be managed by a local board appointed by the superintendent of public instruction. The village, however, did not undertake to defray any part of the expense of conducting or maintaining the school or any of its departments, and the act plainly implies that those expenses are to be borne by the State. ISTo provision is made by the proposals for any contribution by the village to these expenses, nor is any tax authorized for that purpose by the act of 186Y. It also appears that it was a part of the project that there should be a grammar school attached, which was to be free to all children of proper acquirements living in the village. By the act of 1866 the normal scholars were to be selected under the direction of the superintendent of public instruction, who was to provide that every part of the State should have its proportionate representation according to population; hut if any district should not be fully represented, preference was to be given, in supplying the deficiency, to those residing in the village where tho school was located.
 

 From this brief summary of the project, it is apparent that the establishment of the school may well have been deemed by the legislature a benefit to the locality, as well as to the State at large, and the furnishing of the land, buildings and furniture by the village, may have been considered no more than its just contribution toward such benefit. We cannot say, judicially, that the establishment of this school was so
 
 *614
 
 foreign to the interests of the inhabitants of the village that it was beyond the legislative power to authorize the village to contribute toward its establishment.
 
 (Bank of Rome
 
 v.
 
 TheVillage of Rome,
 
 18 N. Y., 43.) Without regard, therefore, to the fact that the school was established on the application of the trustees of the village,,and to the question raised by the counsel for the appellant, that none but the tax-payers themselves could give a valid consent to the assumption of the burden, we think that the case discloses no want of power in the legislature to direct the levy of the tax authorized by the act of 1867.
 

 We have examined the cases of
 
 Morford
 
 v.
 
 Unger
 
 (8 Iowa R., 82);
 
 Ryerson
 
 v.
 
 Utley
 
 (16 Mich., 269), and
 
 Hammatt
 
 v.
 
 The City of Philadelphia
 
 (8 Am. Law Reg., U. S., 411), to which we have been referred on the part of the appellant. The case of
 
 Morford
 
 v.
 
 Unger
 
 follows the cases of
 
 Wells
 
 v.
 
 The City of Weston
 
 (22 Miss., 385),
 
 Cheaney
 
 v.
 
 Horsec
 
 (9 B. Monroe, 330), and
 
 City of Covington
 
 v.
 
 Southgate
 
 (15 B. Monroe, 491), which hold that the legislature cannot authorize a municipal corporation to tax, for its own local purposes, land lying beyond its corporate limits, and that an act extending the corporate limits so as to embrace agricultural land, at a distance, not needed for city purposes, but only for the purpose of subjecting it to taxation, is a mere pretext, and an invasion of private property under color of the power of taxation. The case of
 
 Ryerson
 
 v.
 
 Utley
 
 rests, in part at at least, upon a provision of the State Oonstitution, the effect of which is. to take from the legislature the power of taxation for internal improvements.
 
 Hammatt
 
 v.
 
 The City of Philadelphia
 
 holds an act unconstitutional which authorized an assessment on lots fronting on a street for repaving the street, after it had once been opened and paved, on the ground that such repaving was for the benefit of the general public. That decision goes farther than has ever been attempted in this State, and conflicts with the general course of adjudication here upon similar assessments. We find nothing in any of
 
 *615
 
 these cases to induce us to vary our conclusion as to the act now in question.
 

 It is further claimed that the tax in question was not laid by the legislature, but that by the act of 1866 the power to determine whether the corporators of the village should be subjected to the tax, by the location of the school therein, was delegated to the trustees and not even to the corporators, and that this was an unlawful delegation of power.
 

 It is true that by the act of 1866 the power of making proposals for the establishment of the school in the village was conferred upon the trustees, and that the acceptance of the proposals empowered the trustees to levy the tax. But in the present case the tax was not imposed solely under that act.
 

 After the proposals had been made and accepted under the act of 1866, the act of 1867, authorizing the levy of the tax, was passed. That act was absolute and unconditional, and required no action on the part of the trustees to render it operative. It directed them to carry into effect the proposals they had made, and to raise the required funds by taxation. There was no delegation of power, but a direct action of the legislature authorizing the levy of the tax. The further objection, founded on the sixteenth section of article third of the Constitution, is not tenable. The subject of the act is single, all its provisions relate to that subject, and the subject is fairly expressed in the title, which is “ an act in relation to the establishment of a normal and training school in the village of Brockport.” The general law of 1866 provided a system for the establishment of normal and training schools. The raising of money by bonds or tax in the locality selected, for the purpose of carrying into effect proposals for such schools, was a part of this system. No one could fail to comprehend that the establishment of such a school in the village might involve the use of the corporate credit or the levying of a tax, or both. The case of
 
 Brewster
 
 v.
 
 The City of Syracuse
 
 (19 N. Y., 116) is in point upon this question.
 

 The remaining point raised by the appellant is that the
 
 *616
 
 general act of 1866 is itself unconstitutional, and that the act of 1867 must fall with it.
 

 This point arises on the seventh section of the act of 1866, which appropriates twelve thousand dollars annually, for the support of each of the four normal schools to be organized under that act, and directs that such appropriation be paid out of the income of the common school fund.
 

 Section 1 of article 9 of the Constitution of 1846, declares that the capital of the common school fund shall be kept inviolate, and that its revenues shall be applied to the support of common schools. The application of these revenues to the support of any but common schools is impliedly prohibited.
 
 (People
 
 v.
 
 Board of Education,
 
 13 Barb., 400; 34 H. P., 229.)
 

 These normal schools differ materially from the common schools to which the Constitution refers. They are not intended for the education of the children of the inhabitants of the districts where they are to be located, but for the training of teachers for all the common schools. They are not open to all, but only to such as may be selected at tunes and in a manner to be prescribed by the superintendent of public instruction. Each part of the State is entitled to its due representation. Applicants for admission are required to possess certain qualifications, which must be tested by preliminary examinations, and on the completion of their studies the pupils are to receive diplomas, which shall be evidence of their qualification to teach in common schools; but they are under no obligation to become teachers, and there is nothing to prevent their engaging in other pursuits.
 

 The act itself distinguishes between these normal schools and common schools. The application of the revenues of the common school fund to the support of such normal schools would be clearly in violation of the Constitution, and the direction to that effect, in the seventh section of the act of 1866, must be held void.
 

 It is claimed that this renders the whole act void, on the principle that where one part of an act is void and another valid, yet if it is evident that the former was intended as a
 
 *617
 
 compensation for the latter, and the connection between them is such as to warrant the belief that the legislature would not have passed the valid parts, if the others could not be carried into effect, the whole should be held inoperative. (
 
 Warren
 
 v.
 
 The City of Charlestown,
 
 2 Gray, 84;
 
 Slate
 
 v.
 
 Commissioners of Perry County, 5
 
 Ohio State B., 497;
 
 Slauson
 
 v.
 
 City of Racine,
 
 13 Wis., 398.)
 

 It would, I think, be carrying this principle much too far, and indeed beyond the cases cited in its support, to hold this act void for the reason merely that the appropriation for the support of the schools could not legally be made out of the particular fund designated. If there had been a total want of power in the legislature to make any appropriation for their support, there would be strong ground for holding that the entire scheme must fail; but so long as the legislature has the requisite power to carry into effect the general design of the act, though it may have erred in matter of detail, in designating the fund out of which the support of these schools shall bo drawn, yet as this error was capable of an easy remedy, it should not be held to defeat the whole act and all the proceedings had under it. In the cases cited from 2 Gray, 84, and 13 Wis., 398, the void and valid provisions were so dependent upon each other that an enforcement of the valid portions of the acts would produce a result manifestly contrary to the intention of the legislature, and it was wholly beyond their power to afford the compensation attempted to be provided, while in the case from 5 Ohio State Rep., 497, the law had been submitted to and voted upon by the electors as an entirety. The objection to the present act is not that the legislature cannot provide for the support of these schools, but that they have designated the wrong fund out of which the support is to be drarvn. The implied obligation to provide for their support still remains. If no specific provision had been made in the act, these schools would have depended upon the annual appropriations which the State is in the habit of making for the support of its institutions. By establishing them, and inducing contributions from others for that purpose,
 
 *618
 
 it assumed the duty of supporting them, and if the particular provision which it has attempted to make for such support is objectionable, it must be assumed that the legislature will regard it as their duty to provide a substitute. The trustees of the village must be deemed to have known when they made the proposals, that the school fund could not be used for this purpose, and that they must'depend upon the justice of the legislature .for other provision for the maintenance of the school; and whatever may be the legal presumption as to the legislature of 1866, it cannot be assumed that the subsequent legislature of 1867, when passing the act which authorized the tax in question (Laws 1867, chap. 96) were ignorant that the provisions of the seventh section of the act of 1866 were an unlawful encroachment upon the common school fund.
 

 Even if it were a good objection to the validity of the act of 1867, that the legislature passed, or the trustees accepted it, on the assumption of the validity of the seventh section of the act of 1866, there is no legal presumption that such was the fact.
 

 We do not think the questions raised as to the valuations upon the assessment roll, and the revision and correction of the roll, are properly before us in this form of action. The defendants met to revise the roll, and the extent to which they may have deemed it their duty to correct it did not affect their jurisdiction to levy the tax.
 

 The judgments should be affirmed with costs.
 

 All concur except Chubch, Oh. J., not voting.
 

 Judgment affirmed.