———o———

CITY of ST. LOUIS, Respondent, vs. THOMAS W. SHEILDS, Appellant.

1. *Laws—Legislature—Power to alter or repeal—Municipal Corporations.*— Legislatures can alter or repeal at will all acts affecting or giving power to municipal corporations, unless the language of the act is too clear to admit of a doubt that they parted with that power.

2. *Laws—Contracts, obligations of—Parties in interest—Third parties.*—If a law impairs the obligations of contracts, the persons injuriously affected thereby are the proper parties to apply to set it aside; third parties have no standing in court for such purposes.

*Appeal from St. Louis Circuit Court.*

*Spencer & Hatch*, for Appellant.

I. It does not belong to the complainant vicariously to enforce the contract of other persons or protect their rights. (Gilman vs. City of Sheboygan, 2 Black, 513.)

II. The burden of proof that the act in question is unconstitutional rests upon the complainant, and that proof must be so clear and convincing that not a doubt remains. (Fletcher vs. Peck, 6 Cranch., 87 ; 48 Mo. pp. 470 and 471.)

III. All Legislative enactments containing a delegation of power to municipal corporations exist here "*bene placitum*," and are revocable at pleasure. · (Debolt vs. Ohio Life Ins. & Trust Co., 1 Ohio State 568 ; East Hartford vs. Hartford Bridge Co., 10 How, 535.)

IV. "The imposition, modification and removal of taxes, and exemption of property from such burdens, is an ordinary exercise of the power of State sovereignty. There is no pledge expressed or implied that this power should not thereafter be

exercised." (Gilman vs. City of Sheboygan, 2 Black, 513.) The unlimited power of the State over municipal corporations is also fully considered in Kent's 2 Com., pp., 305 and 306; Mechanics and Traders, Bank vs. Debolt, 1 Ohio State R., 591; 2 Parson, Cont. p., 681. Dartmouth College vs. Woodward, 4 Wheaton, 697; 13 Mo., 400; 34 Mo., 546; Knoup vs. The Piqua Bank, 1 Ohio State R., 603.)

*N. A. Mortell*, for Respondent.

I. If the contract between the City and the purchasers of its harbor bonds when made, was valid by the laws of the State, its validity and obligations cannot be impaired by any subsequent legislative action or decision of its courts altering the construction of the law. (4 Wallace, 206; 16 Howard, 432; 1 Dillon Cir. Ct. R., 528.)

II. Where a State has authorized a municipal corporation to contract and exercise the power of local taxation to the extent necessary to meet its engagements, the power thus given cannot be withdrawn until the contract is satisfied. The State and corporations in such cases are equally bound. The power given becomes a trust which the State cannot annul and the corporation must execute. (Von Hoffman vs. City of Quincy, 4 Wallace, 535; 1 Dillon Cir. Ct. Report, 526; 2 Am. Law Register; 4 Wright, Pa., 348; 4 Peters, 514; 3 Howard, 133.)

III. This act of 1872 repealing the wharfage tax, is an exercise of judicial power by the Legislature which the United States Constitution has expressly forbidden. (Cooley Constitutional Limitation, 87, 114, 392.)

*McCarty*, for Respondent.

I There was an express agreement that this power of taxation should not be withdrawn. The revenues of the wharf were pledged as security, and a security cannot at the same time be pledged and withdrawn.

II. The City of St. Louis appears as a party to the contract that is impaired; it is in the enforcement of that contract that this question arises.

III. Where a State has authorized a municipal corporation

to contract and to exercise the power of local taxation to the extent necessary to meet its engagements, the power thus given cannot be withdrawn until the contract is satisfied. ( 4 Wallace, 534–5.)

WAGNER, Judge, delivered the opinion of the court.

The question presented for determination is the constitutionality of the act, approved March 28, 1872, prohibiting the collection of wharfage from steamboats, so far as the same applies to the city of St. Louis.

It seems that in 1865 (Sess. Acts 1865, p. 440,) the Legislature passed an act for the improvement of the harbor of the city. By the provisions of that act, the city was authorized, for maintaining and improving the wharf, to apply all the net receipts from wharfage, and all the money at that time in the Treasury to the credit of the wharf funds; also, for the same purpose to borrow $500,000 by an issue of bonds, running for the term of twenty years, for the payment of the principal and interest of which the revenues of the wharf were to be pledged ; and the City Council was further authorized, in its discretion, to levy a harbor tax of not exceeding one-tenth of one per cent. upon all property made taxable by law for State purposes within the limits of the city, the proceeds of which tax was to be held sacred for the purpose of paying the principal and interest of the wharf and harbor debt.

In pursuance of this authority, the City Council passed an ordinance directing the Mayor and Comptroller to sell the bonds, wherein they pledge the faith and credit of the city for the payment of the principal and interest, and the revenue derived from wharfage is likewise pledged for the same purpose.

By the act of 1872, all acts which in any manner authorized a municipal corporation to collect a wharfage or tonnage tax were repealed.

The court below held the act unconstitutional, as impairing the obligations of a contract, and gave judgment for the plaintiff, who sued the defendant for refusing to pay wharfage.

As this case now stands, it is difficult to perceive how any

question as to the constitutionality of the law can be raised. In the passage of the law it cannot be pretended, that the State made a direct and irrevocable contract with the city. The city possesses no power which is not delegated by the sovereign authority of the State. The State, in the enactment of the law, granted to the city a privilege, but it did not divest itself of the power of repealing or withholding that privilege at pleasure. The city can only raise money and apply it to a particular purpose by virtue of delegated authority, and the same authority that grants the power may alter the law and divert it to a different object.

In the case of the State ex rel., The Police Commissioners, etc., vs. The St. Louis County Court (34 Mo., 546), it was held that the acts of the Legislature providing the objects for which county funds can be appropriated, are at all times subject to repeal or alteration, so as to appropriate the funds in a manner or to objects different from those before provided; and that, while the Legislature cannot take from the county its property, it has full power to direct the mode in which the property shall be used. If this proposition is conceded as to property already possessed by a corporation or minor subdivision of the State, it is certainly stronger when applied to a case where nothing is reduced to possession and only exists in the future.

Gilman vs. The city of Sheboygan (2 Black, 510,) is a case very nearly parallel with the one at bar. There the Legislature of Wisconsin passed an act, authorizing the city of Sheboygan to borrow money upon the credit of the city, to be invested in the capital stock of a railroad company. The act further provided, that the city should annually levy a tax upon all taxable property of the city, sufficient, in addition to the dividends upon the shares of its stock in the company, to pay the interest upon the bonds.

Under the act in question, the city made loans and issued its bonds therefor. Subsequently, an act was passed by the Legislature providing that thereafter all taxes levied by the Common Council of the city, for the payment of principal or

interest of any bonds issued to aid in the construction of the railroad, should be levied on the real estate of the city exclusively. It was contended there as here, that the act exempting personal property from levy and taxation, was an impairment of the contract with those who owned the bonds, and was therefore void. The bondholders, however, were not parties to the suit nor did they complain. But the Supreme Court of the United States, through Mr. Justice Swayne, who delivered their unanimous opinion, discountenanced this assumption and held otherwise in the following emphatic language. "The act of 1854 authorized the borrowing of money, the issuing of bonds, and the levying of a tax upon all the property in the city for the purposes specified. The imposition, modification and removal of taxes and the exemption of property from such burdens, is an ordinary exercise of the power of State sovereignty. There is no pledge, express or implied, that this power should not thereafter be exercised.

"Admitting that the State could enter into such an engagement, there is no evidence that it did. This fact should never be assumed unless the language used be too clear to admit of doubt.

"If the agreement existed, the complainant is not in a position to make the question. There is no allegation that the tax levied is insufficient. We hear of no complaint from the bondholders. They are not before us. It does not belong to the complainant, vicariously to enforce their contract and protect their rights."

So in this case, if we admit that the State could enter into an engagement which it could not lawfully repeal, still the case does not show that such was clearly the intention.

It is true the act authorizes the city to pledge and appropriate the revenues of the wharf for the payment of the principal and interest on the bonds, but this amounts to a legislative direction only, and is not conclusive that the Legislature intended to tie up its hands and take away the power of repeal.

In the next clause different language is used, and it is declared, that the tax levied upon all property made taxable by

law for State purposes, within the city, shall be held sacred for the purpose of paying the debt and interest. This shows that the revenue, accruing under this general power of taxation, was to be used for the purposes specified, and no other. It does not appear from the record that the revenue, arising from the tax imposed on all the taxable property, is insuffi. cient to meet the liabilities incurred. The bondholders are not before us. They make no complaint. They are not presenting any claim that their security is impaired, and the plaintiff cannot complain for them and attempt to enforce their contract or protect their rights, when they have not seen proper to do so. The repeal of the law may have worked injustice, but we cannot interfere on that account, but were the, bondholders here asking for a protection of their rights, and showing that the collection of their debts were impaired, a different case would be presented.

The case of Von Hoffman vs. City of Quincy (4 Wall., 535) is not in opposition to these views. There the proceeding was instituted by the bondholders themselves, and it appeared that the repeal of the law not only lessened their security, but it amounted to a direct denial of all remedy. The city of Quincy issued the bonds under the provisions of several acts, by which it was authorized to collect a special annual tax upon the property, real and personal, therein, sufficient to pay the annual interest upon any bonds thereafter issued for railroad purposes. The city failed to pay the coupons held by Von Hoffman for a long time after they became due, and he brought suit and obtained judgment upon them. An execution was issued, and returned unsatisfied. The city neglected and refused to levy the requisite tax to satisfy the execution, and he prayed for a mandamus to compel the city and its officers to pay over the amount of its judgment, and if the money was not in their hands, to levy a special tax as required by the acts of the Legislature before referred to. To the writ the city filed a return, pleading a subsequent act of the Legislature restricting the city from levying taxes beyond a certain prescribed amount, and stating that the limit had been exhausted,

and that no money remained in the Treasury which could be applied to the relator's demand, and that it was prohibited from making any additional levy.

Under these circumstances the Court awarded a peremptory writ and held that a subsequently passed statute which repeals or restricts the power of taxation previously given, in so far as it affects bonds bought and held when the repealed law was in force, was a nullity, and that it was the duty of the corporation to impose and collect the tax in all respects as if the second statute had not been passed.

In that case, it will be observed, the second statute took away all the rights of the bondholders to have any satisfaction whatever. The contract was left in full force, but the remedy was entirely withdrawn. It was equivalent to giving them a mere shadow and withholding the substance. They had no other fund to look to, and when that was taken away their claim might as well have been annihilated.

But in the present case there is another fund sacredly pledged for the payment of the principal and interest of the bonds, which has not been touched or interfered with, and for aught we know, it is entirely adequate to satisfy the indebtedness. Should this, however, turn out otherwise, and the fund remaining prove insufficient, then the bond-holders, at their own instance and upon their own application, might have the same remedy that was pursued in Von Hoffman's case. But the question is not before us, and of course no decision is given. For these reasons I think the judgment should be reversed. The other Judges concur.