Corlett, J.
On the 10th day of July, 1886, the said school commissioners and Prof. Babcock, the superintendent of the Dunkirk Union Free School, after due notice, in pursuance of chapter 654 of the Laws of 1872, examined Howard B. Crissey, Herman L. Gifford and the relator, Mary B. Hill, with others, for such scholarship.
Crissey was a student in the State Normal and Training School, at Fredonia, Chautauqua county, and the relator was a student in the Union Free School at Jamestown.
The commissioners awarded the certificates to Howard B. Crissey and Herman L. Gifford.
The claim of the relator is, that Crissey was not eligible, because he was not a student of a public school of the county, within the statute.
Free scholarships were first provided for by chapter 511 *605 of the Laws of 1863, which allowed competition between students in academies, public and other schools.
By chapter 585, of the Laws of 1865, competition was limited to academies and public schools of cities and counties.
It was further amended by chapter 654, of the Laws of 1812, and still later by chapter 614, of the Laws of 1886.
The last amendment does not affect the question now before the court.
Common schools were established on a permanent basis by the legislature of 1812, but have always existed from the foundation of the government, and were deemed necessary to its existence and perpetuation.
Chapter 91, of the Laws of 1854, provided, among other things, “that it shall be the duty of the superintendent to visit as often as may be practicable such and so many of the common schools, academies, and other literary institutions of the state, as he may deem expedient, to inquire into the course of instruction, management,” etc.
The first Normal School was created by the legislature at Albany.
By chapter 566, of the Laws of 1866, additional normal schools were provided for, under the control of the superintendent of public instruction.
The Fredonia Normal and Training School was created by chapter 223, of the Laws of 1861, in pursuance of the act of 1866.
Section 1 provides: “The trustees of the village of Fredonia are hereby authorized to assess and collect, from time to time, upon all the taxable property in said village taxes not exceeding in the aggregate $100,000 for the purpose of establishing a normal and training school in said village, and shall have the power to borrow money on the credit of said village for the purchase and improvement of the site and for erecting school buildings thereon for said normal and training school, with departments for academic, experimental and practicing schools.”
And section 3 is as follows: “That the superintendent of public instruction may, if in his opinion suitable buildings and rooms are provided at the village of Fredonia, open and put in operation at any time a normal and training school at said village in pursuance of chapter 466 of the Laws of 1866.”
The legislature provided for defraying the expenses of the normal schools, in part, by appropriating for that purpose certain funds intended for the common schools. But the court of appeals decided in Gordon v. Cornes (47 N. Y., 608), that such appropriation was repugnant to section 1 of article 9 of the constitution and therefore void; so that the support *606 of those schools is by taxation upon the property in the state.
The provisions of the statute, applicable to this question, are as follows : “The school commissioner_or commissioners of each county and the board of education of each city, or those performing the duties of such a board, shall select, annually, the best scholar of their respective counties or cities, as candidates for the university scholarships.”
It is admitted, by the learned counsel for the relator, that normal schools'are public ones. This is necessarily só in the broadest sense. They are created by authority of the state, are state schools supported by taxation, and are under the charge of state officers; so there is no room to claim that they are not public schools.
The statute designates these schools as “normal ” and the others as “ common,” but both are equally schools. It is otherwise with academies. They are not usually spoken of as schools, although created for educational purposes.
It may be assumed, therefore, that the legislature used the word “academy,” so as to leave no room for doubt as to the legislative intent upon the subject. But the words “public schools” embrace all classes, whether “common” or “normal,” in the absence of words of limitation.
It is a general rule that all statutes “must have a construction according to the language employed, and where no ambiguity exists, courts cannot correct supposed defects.” Benton v. Wickwire, 54 N. Y., 226; Johnson v. Hudson R. R. Co., 49 id., 455; Hudson Iron Bridge Co. v. Alger, 54 id., 173.
This school, being a public one, the next question is, whether it was a public school of the county of Chautauqua. Public schools are not the creations of a county or civil division of the state. They are all established by legislative enactment, but for convenience, and to secure the ends desired, they1 are located in different counties and towns. This applies equally to common and normal schools. The school in question is, by express enactment, located in Chautauqua county. The particular place is Fredonia, but that village is within the comity, and is also in one of its assembly districts. The words “of their respective counties” must be construed as relating to location—place; and the normal school at Fredonia is as much a public school of the county as any other within its territorial limits.
The suggestion that common schools are more intended for the benefit of all classes of people than any other, is undoubtedly true; but the legislature has, from time to time, passed acts to make these schools more efficient, and secure a better qualified class of teachers. To that end provisions were made in favor of free schools and academies.
*607 It was also deemed wise to create normal schools, placing them under the supervision o£ the superintendent of public instruction. All the statutes on that subject are, in pari materia, intended to aid in the advancement of education.
There is no good reason why a student in a normal school should not stand on an equal footing with one in an academy. As between public schools, there should be no discrimination for or against, in the absence of special reasons. If the common school proper, the free school, academy or normal school—each being public—has diligent and meritorious students, no reason is perceived why merit in the one is not entitled to equal consideration with the same in the other. It cannot be assumed that the advantages which the university free course confers will diminish the usefulness of the scholar having that advantage. The stipulation on which this application is based concedes that if Orissey is eligible, the application should be denied. If, for any reason, the present statutes work injustice, the remedy is with the legislature and not the courts.
It follows, that the application for a mandamus cannot be granted.