# THE STATE *ex rel.* AULL, *Appellant*, v. FIELD, Judge, *et al.*

### In Banc, February 5, 1894.

1. **Constitution**: STATUTE: REPEAL. The fact that an act of the legislature is unconstitutional and for that reason void does not make unconstitutional an act passed to repeal it and to substitute another in its stead.

2. ——: ——: TITLE. The constitutionality of an act of the legislature, originating in the house of representatives, is not affected by the fact that its title was amended in its progress through the senate.

3. ——: ——: ——. The house is not required to treat a bill that is returned to it by the senate as a senate bill because its title was amended by the senate.

4. ——: ——: PRESUMPTION. The validity of an act is not affected by the fact that the house journal did not affirmatively show that certain amendments made by the senate to a house bill were printed prior to their adoption by the house as required by the constitution, article 4, section 30; the presumption being that they were so printed.

5. **Statute**: SPECIAL AND LOCAL LAW. The act of April 7, 1893 (Acts, p. 141) providing for the holding of two terms of court at Higginsville, in Lafayette county, is not a local or special law.

6. ——: CONSTITUTION. The fact that parts of an act are unconstitutional will not render the entire act unconstitutional if the act, excluding such parts, is capable of being executed in conformity with the legislative intent.

7. ——: ——: TAXATION. It is within the power of the legislature to impose a tax upon a particular subdivision or municipality of the state when, in the judgment of the legislature, such tax is for the benefit of such locality as well as the state at large.

*Appeal from Lafayette Circuit Court.*—HON. E. J. BROADDUS, Special Judge.

AFFIRMED.

*William Aull, Wallace & Chiles, Shewalter & Wilson, Alexander Graves, John S. Blackwell, William Young* and *John Welborn* for appellant.

(1) The act of February 14, 1893, is void because the title is simply to repeal section 43 of the act of the extra session of April 7, 1892. The second section thereof, not being embraced in terms in the title, and the enactment of the new law fixing the terms of court not having a "natural connection with" and not being "an incident or means of accomplishing" the repeal of the then existing statute, is void. It is admitted that the title of an act need not embrace all of the provisions of the bill—such a requirement would destroy the object of the constitutional limitation—and under a general head all the details germane to the title of the bill may be embraced in the bill. This is the gist and full extent of the authorities. Sutherland on Stat. Const., secs. 87, 88, 102; *State ex rel. v. Schofield*, 41 Mo. 40; *City v. Tiefel*, 42 Mo. 578; *Ewing v. Hoblitzelle*, 85 Mo. 64, on page 70; Cooley's Const. Lim., t. p. 175; *Allen v. Louisiana*, 103 U. S. 80. (2) The act of February 14, 1893, being unauthorized and void, as shown in point 1, *supra*, the act of April 19, 1893 (Session Acts, 1893, pp. 141, 142) could neither repeal a nullity nor enact "a new section in lieu thereof," that is, in lieu of such nullity. A void law is the same as if it had never existed. Cooley's Const. Lim. [4 Ed.], p. 227; *Strong v. Daniel*, 5 Ind. 344. (3) The act of April 19, 1893, was never constitutionally passed by the general assembly. The senate amendments to the bill as it came from the house were not referred to the supervising committee on engrossment as required by sections 27, 29 and 30 of article 4, of the state constitution; nor did the house cause the

The State ex rel. v. Field.

senate amendments to be printed as required by said section 29. These sections, 27, 29 and 30, of article 4, of the constitution, all having direct reference to the mode and manner prescribed by that instrument for the passage of bills through the legislature should be read and construed together and are mandatory. *State v. Burgdoerfer*, 107 Mo. 30. (4) The act of April 19, 1893, is a local and special law within the terms of section 53, article 4, of the constitution. *First.* It invests the judge of the fifteenth judicial circuit with special powers and imposes upon him duties not possessed or imposed upon the other circuit judges by general law. *State v. Toole*, 71 Mo. 650; *Ewing v. Hoblitzelle*, 85 Mo. 75; *State ex rel. v. Shields*, 75 Mo. 341. *Second.* It is local in that it prescribes a different manner of establishing and maintaining the courthouse, clerk's and sheriff's offices at Higginsville from that provided by general law. *Third.* It is special and local in that it regulates civil practice in cases of changes of venue in certain cases. *Fourth.* It is local and special and violates section 53, article 4, of the constitution by regulating the affairs of the city of Higginsville, in directing the appropriation of its revenue. *State ex rel. v. Pond*, 93 Mo. 606. (5) The act in question is unconstitutional, in that it is an attempted delegation of its powers by the legislature to Judge Field to appoint a "place" for the holding of a circuit court in Lafayette county. Cooley's Const. Lim. [5 Ed.], t. p. 116, and notes 1 and 2; *Ibid.* s. p. 121, 122. "And whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined without regard to any legislative assertion on that subjection." Sec. 53, art. 4, Const. of Mo. Courts take judicial notice of census returns. *State ex rel. v. County Court*, 89 Mo. 237; *State v. Pugh*, 43 Ohio St. 98. Further as to local

and special laws, see Sedgwick on Const. Constr. [2 Ed.], p. 629, note; *Earle v. Board*, 55 Cal. 489; *State ex rel. v. Judges*, 21 Ohio St. 1–11. Whether an act is local and special, or general, must be determined by its operation and effect and not by its form. *Ibid.* (6) Municipal taxes can only be used for municipal purposes, and an act of the legislature authorizing the appropriation of such taxes for state or county purposes, as in this case to support the judiciary by renting a courthouse in which the people of the county or state are equally interested, is the taking of one man's property for public use without just compensation, and the act is therefore void. Constitution of Mo., art. 10, sec. 1; *Ibid.*, art. 10, sec. 2; *Fishkill v. Company*, 22 Barbour, 634; *Knoxville v. Lewis*, 12 Lea, 180; *Nashville v. Herbert Towns*, 5 Sneed, 186; *State ex rel. v. Leffingwell*, 54 Mo. 458; *Wells v. City*, 22 Mo. 384; *St. Charles v. Nolle*, 51 Mo. 122. (7) A judgment of the circuit court being void, no right could be founded on it. And for same reason, no right can be founded or built upon a void act of the legislature. *Wernse v. McPike*, 76 Mo. 252; s. c., 100 Mo. 489; *Ruggles v. Collier*, 43 Mo. 263; *People ex rel. v. Cooper*, 83 Ill. at pp. 595, 596; *Hinze v. People*, 92 Ill. 406; *Connell v. People ex rel.*, 107 Ill. 384; *State ex rel. v. Dousman*, 28 Wis. 541. (8) Judge Field, no more than special commissioners, could provide courthouse or impose liability on county to pay rent for same. *State ex rel. v. Supervisors*, 25 Wis. 339.

*Samuel Davis* and *Leslie Orear* for respondents.

(1) The act approved February 14, 1893 (Session Acts, 1893, page 142), entitled "An act to repeal section 43 of the acts of 1892 (extra session) approved April 7, 1892, entitled 'An act to re-district the state

into judicial circuits, and to fix the terms of courts therein,'" was not unconstitutional and void for want of a sufficient title. Const., art. 4, sec. 28; Ordronaux's Const. Leg., 608; *People v. McCaur*, 16 N. Y. 58. (2) The word "repealed" is not necessarily to be taken in its most sweeping and absolute sense. *Rex v. Rogers*, 10 East, 573; *State v. Fiala*, 47 Mo. 310. (3) It is a question of construction whether a later act operates as a total or partial repeal of a prior one. Sedgwick on Constr. of Const. & Stat. Law, p. 129; Endlich on Inter. Stat., sec. 86. Repeals by implication are not favored. *State ex rel. v. Draper*, 47 Mo. 29; *State ex rel. v. Miller*, 100 Mo. 439; Anderson's Law Dictionary, p. 879. (4) The subject of the act of February 14, 1893, is single—the subject of the act which it seeks to amend, or part of which it seeks to repeal, is the times and places of holding courts in the state of Missouri, restricted in this case to the courts mentioned in section 43 of said act. It was, in fact, an amendatory act and constitutional. *State v. Addington*, 77 Mo. 110; Endlich on Interpretation of Statutes, sec. 181. (5) The act in question does not infringe the constitutional requirement that "no bill shall contain more than one subject, which shall be clearly expressed in the title." *City v. Tiefel*, 42 Mo. 578; *State v. Matthews*, 44 Mo. 523; *State v. Miller*, 45 Mo. 495; *State v. Bank*, 45 Mo. 508; *In re Burris*, 66 Mo. 442; *Hannibal v. Marion Co.*, 69 Mo. 571; *State v. Chambers*, 70 Mo. 623; *State ex rel. v. Mead*, 71 Mo. 266; *State v. Ransom*, 73 Mo. 78; *State ex rel. v. Laughlin*, 75 Mo. 388; *State ex rel. v. Shepherd*, 74 Mo. 310; *Ewing v. Hoblitzelle*, 85 Mo. 64; *Bergman v. Railroad*, 88 Mo. 678; *State ex rel. v. Dolan*, 93 Mo. 497. (6) In adopting a title the legislature may select its own language and may use few or many words; it is sufficient that the title fairly embraces the subject-matter covered by the act; mere matters of

detail need not be stated in the title. *State ex rel. v. Miller*, 100 Mo. 445; *State v. Burgdoerfer*, 107 Mo. at p. 29; *Luther v. Saylor*, 8 Mo. App. 430; *State v. Blackstone*, 22 S. W. Rep. 370. (7) It is immaterial in this case whether the act of February 14, 1893, was or was not constitutional. It is within the compass of the legislature to repeal an unconstitutional law. Such repealing law may protect rights acquired by those acting under their provisions. 1 Sutherland on Constr. of Const. & Stat. Law, sec. 136; *Southwark v. Com.*, 26 Pa. St. 446; *Railroad v. Brick Co.*, 85 Mo. 307; *Miller v. Dunn*, 72 Cal. 462; *Gordon v. Coones*, 47 N. Y. 616. (8) The facts in evidence show that the provisions of the constitution were fully complied with in the passage of the bill. Lawson on Rights and Remedies, sec. 3769; *Att'y Gen'l v. Rice*, 64 Mich. 385. (9) The constitution does not require a bill to preserve the same title through all its stages in both houses; an unessential, false description can never defeat a grant, contract or other instrument, nor would it defeat a statute. *Railroad v. People*, 33 N. E. Rep. 173; *Larrison v. Railroad*, 77 Ill. 11; *Binz v. Weber*, 81 Ill. 288; *Plumer v. People*, 74 Ill. 362; *Walnut v. Wade*, 103 U. S. 683; *Cantini v. Tillman*, 54 Fed. Rep. 969. (10) The point that the act in question imposes a duty on the judge of the Lafayette circuit court in addition, and different from, the powers imposed on the other circuit court judges by the general law is not tenable. *State ex rel. v. Hughes*, 104 Mo. 459; *State v. Orrick*, 106 Mo. 111. (11) The act is not void because it authorizes and requires the city of Higginsville to pay the rent of the courthouse and clerk's office. There is nothing in the constitution prohibiting such use of municipal funds, and enactments of similar character have been frequently upheld in this state. *State ex rel. v. Hughes*, 104 Mo. 459; *Hannibal v.*

*Marion Co.*, 66 Mo. 571; *St. Louis v. Shields*, 52 Mo. 351; *State ex rel. v. Court*, 34 Mo. 546; *Hamilton v. Court*, 15 Mo. 5.   (12) With the above provision stricken out, there is enough in the act to make it a perfect and complete law.   Cooley's Const. Lim. [5 Ed.], 211, 212; *Allen v. Louisiana*, 103 U. S. 80.

GANTT, J.—This is a proceeding, by the prosecuting attorney of Lafayette county, against Judge Field and the clerk of the circuit court and sheriff of said county to restrain them from carrying out the provisions of "An act to repeal an act approved February 14, 1893, entitled, 'An act to repeal section 43 of the acts of 1892 (extra session), approved April 7, 1892, entitled, "An act to redistrict the state into judicial circuits, and to fix the terms of courts therein;"' and to enact a new section in lieu thereof, to be known as section 43, and providing for holding two terms of court at Higginsville, in Lafayette county," approved April 19, 1893.

Among other things, the petition alleges that the act in question, providing for two terms of the circuit court to be held at Higginsville, is unconstitutional; and that Richard Field, circuit judge, Wm. L. Ewing, circuit clerk, and Zachariah W. Wright, sheriff, propose to carry out said enactment as they are required to do by said alleged act, to wit: Said Richard Field as such judge is about to select a place for the holding of two terms of said court at Higginsville and offices for the clerk and juries of said court, etc.

It is claimed by the plaintiff that the act in question is void for various reasons, among which are the following: "Because the act of February 14, 1893, known as House Bill No. 31 (as shown by the Journal), is in violation of the constitution of the state, in that the subject thereof is not clearly

expressed in the title; in that the said title purports only to be a repealing act, whilst the body of the bill purports to be an act re-enacting a new section, fixing the terms of the circuit and criminal courts throughout the fifteenth judicial circuit, including Johnson county; and that House Bill No. 603 (or the bill in question) being by its title and terms an act to repeal, or amendatory of, a void law, and an effort to re-enact a new law in lieu thereof, is necessarily void with the law it purports to amend."

"*Second.* That said purported act is also void, for the reason that said bill purported to originate in the house of representatives, and, being passed, was sent to the senate for action; that as said act passed the house its title read as follows: 'An act to repeal an act approved February 14, 1892, entitled, "An act to repeal section 43 of the acts of 1892 (extra session) approved April 7, 1892, entitled, 'An act to redistrict the state into judicial circuits and to fix the terms of courts therein.' " ' In the senate the title was amended by adding thereto the words, 'And to enact a new section in lieu thereof to be known as section 43 and to provide for the holding of two terms of court at Higginsville in Lafayette county;' that as said bill originally passed in the house it was null and void for the want of proper title, and that the title thereto first became complete, if at all, in the senate, and being returned to the house, the amendment so received was not printed after engrossment before its final passage as provided for by the constitution, and so violates sections 29, 30 and 31 of article 4 of the constitution, and said bill after amendment of the title in the senate for the first time, if at all, contained a valid title, and hence within the meaning of the constitution originated in the senate and being sent to the house, was not read therein on three different days."

"*Fourth*. That said purported act is void and in violation of the constitution of this state, for the reason that it attempts to authorize municipal funds raised by municipal taxation, for municipal purposes, to be misapplied to the renting of a courthouse, and clerk's office for the judicial department of the state government.

"*Fifth*. That said act is a local or special act in the following particulars, to wit: (*a*) It attempts to provide a mode of establishing and maintaining a courthouse, and paying the expense therefor, different from the mode and manner in which our courthouses are maintained and expenses paid. (*b*) It imposes a duty and authority upon the judge of the circuit court of Lafayette county, in addition to, and different from the powers and duties held and possessed by other circuit judges throughout the state. (*c*) It affects by special legislation the title of real estate, and provides when and where certain real estate may be sold, all of which could be reached by general law upon the respective subjects. (*d*) That it imposes upon respondent, Judge Field, the duty of furnishing the courthouse, and authorizes him to create a debt therefor, against Lafayette county, whereas that object can be, and in fact is, reached by general law; it is the duty of the county court to furnish courthouses and they alone can be authorized in first instance to do so.

"*Sixth*. Said bill number 603, further violated the constitution of the state in that by its title it only purports to repeal an act and establish a court at Higginsville, while in its body it attempts to fix time for holding court and terms of court in Lafayette, Pettis and Saline counties also.

"*Seventh*. Said act approved February, 1893, and said other act approved April 19, 1893, are singly and combined, violative of the twenty-eighth section of

article 4 of the constitution of the state, as to the title and contents thereof; and said act approved April 19, 1893, is also in violation of sections 25, 26, 27, 28, 29, 30, 31, 32, 33, 34 and 53 of article 4, and sections 11 and 12 of article 10 of said constitution.''

The answer of defendants, after admitting the passage of the acts in question, denies that the act purporting to establish two terms of court at Higginsville is unconstitutional, which is followed by a general denial. Both parties waived a hearing for a temporary injunction and the cause was heard on its merits for final determination.

Upon the hearing, house journal of session 1893 was introduced in evidence so far as it related to the passage of the acts called in question by the petition. Judge Field, Sheriff Wright and Clerk Ewing were called, all of whom stated that it was their purpose to carry out the terms of the act, as directed therein, for the establishment of a court at Higginsville.

The case was tried on its merits before Hon. E. J. Broaddus of the seventh judicial circuit, who was called in by Judge Field to try the case; upon a hearing of the case the court found the issues for the defendants, and rendered a judgment dismissing the relators' bill.

I. Much unnecessary discussion will be avoided, if we determine at the outset the relation the act of April 19, 1893, bears to the act of February 14, 1893. If it was a repeal of the former act, and the adoption of a new section in lieu thereof, then we are relieved of passing upon the constitutionality of the act of February 14.

The constitution furnishes the test by which the intention of the legislature is to be ascertained. It requires that the statute should be confined to one subject "which shall be clearly expressed in its title." The title to this act of April 19, is "An act to repeal an

act approved February 14, entitled, etc., and to enact a new section in lieu thereof." The purpose is expressed in plain and unambiguous language. No amount of argument, analysis, or verbal criticism can throw any additional light upon the meaning of these words. They need no construction, and we shall attempt none. The act itself contains but two sections. The first enacts that the act of February 14, 1893, *be and it is hereby repealed,* and "the following new sections enacted in lieu thereof." The body of the act conforms in every essential particular to the title, and leaves no doubt on the subject.

It is perhaps due to the learned counsel for relator to say that they do not seriously question that, if the act of February 14 was constitutional, it was repealed by the subsequent act of April 19, but they base their argument upon the assumption that the former act was unconstitutional and therefore void, and insist that the legislature could not repeal a void act, and make it the basis of a valid enactment. But it must be plain that this is specious reasoning.

The legislature of this state has a plenary law-making power within the territorial limits of this state, either to enact new laws or repeal old laws, unless prohibited by the constitution of the United States or the constitution of this state. But it is said a void act is no law, and the power to repeal does not reach it. It is evident however that this argument ignores the fact that unconstitutional enactments are sometimes spread upon our statute books and are obeyed by the people and the officers of the law, and are usually clothed with the semblance at least of valid laws. They stand unchallenged sometimes for years, and then present the gravest questions for the determination of the courts. Now, when placed upon the statute books by the action of the legislature, why should not the same govern-

mental agency remove them from the statutes and prevent them from becoming snares and pitfalls, to the people of the state.

Surely it needs no argument to demonstrate that the legislature has the power to see that nothing shall deface our statute books that is not a law. It is of supreme importance to the administration of justice in our courts that the people should obey the processes of our courts and that no doubt should exist as to the rightfulness of the sessions they hold. Under our system a court can only be held at the time and place appointed by law and the most direful consequences might ensue, if the judges and officers of the law were to meet and pass upon the personal and property rights of our citizens at times or places unauthorized by law.

Now the relator says the act of February 14 was unconstitutional, but upon its face, it essayed to fix the times for holding courts in the fifteenth judicial circuit of this state, a large and populous district, and yet when the legislature also discovers the truth, as relator sees it, and deems it a matter of simple justice that its own improvident action shall not mislead the judge and officers of the court in that circuit and solemnly declares according to the forms prescribed by the constitution that the said act of February 14 is not and shall not be considered and obeyed as a law of this state, they are met with the objection that they can not repeal a void act. The bare statement of the proposition furnishes its own refutation. Certainly the legislature may purge the statute books of any matter not lawfully there. To deny it this power is to ascribe to it a most dishonoring impotence and a disregard of the analogies of the law.

A judgment or decree of a court, though formal, is void if the court had no jurisdiction over the subject-matter or the persons of the parties; and may be disre-

garded even in collateral proceedings; but courts do not on this account hesitate to set aside and declare such judgments void, when their attention is called to them.   On the contrary, they regard it a plain duty to set aside such judgments.   *Cole v. Cole*, 3 Mo. App. 571; *Cole v. Cole*, 4 C. L. Journal, 64.

So when an act of the legislature is void for failure to observe some constitutional prerequisite, nothing could be more appropriate than for the legislature to remove the act at once from a place among the valid laws of the state and by an apt reference call attention to its repeal and at the same time enact a valid law on the same subject in its stead.   It is not an attempt to resuscitate the void act, nor to build upon it as a foundation. It is a simple declaration that in future it is not to be regarded.   The power to repeal a law has been held to involve the power to abrogate a bill in its progress before it becomes a law.   *Bank v. Commonwealth*, 26 Pa. St. 446.

But we agree with the learned circuit judge who heard this cause, that "the right of the legislature to repeal an unconstitutional act is self-evident, and needs no precedent to prove its soundness." Holding, then, as we do, that the act of April 19, was a repeal of the act of February 14, 1893, it can make no difference whether the latter act was or was not unconstitutional. If it was constitutional, it was repealed by the express repealing clause of the later act; if unconstitutional, it was either repealed by said act, or so much of the act of April 19 as refers to it, may be wholly disregarded as surplusage, and the remainder of the act construed, as it was evidently intended to be, an amendment of section 43 of an article entitled: "An act to redistrict the state into judicial circuits and to fix the terms of courts therein," approved April 7, 1892, and would operate as a repeal of said section in the act of 1892, by necessary

implication, because the subsequent statute, dealing as it does with the identical subject of the act of April 7, 1892, is so repugnant to it that the two can not be so construed that they can be harmonized and both remain in force; and this being true, the later act displaces the former. Sutherland on Statutory Construction, secs. 137, 138.

II.   So far we have discussed the effect of the act of April 19, 1893, known in the journal as House Bill No. 603, on the assumption that it was passed in pursuance of the constitution. We come now to the point made by relator's counsel, that it was never constitutionally adopted by the general assembly. Their contention is, first, that as the bill passed the house, its title did not contain the words, "and to enact a new section in lieu thereof to be known as section 43 and providing for the holding of two terms of court at Higginsville in Lafayette county," and these words having been added by way of amendment in the senate, the bill must be regarded as originating in the senate; and upon its return to the house it was not printed, and read three separate days, printed and referred to the proper committee; in other words, it was not enacted by the house by the steps required where the bill originates in the senate. Or, secondly, if it is to be regarded as originating in the house, amended in the senate, and returned to the house, then neither the bill as amended *as a whole* or the amendment alone, *was printed in fact*, and reported by the proper committee, as correctly printed, for the information of the house.

To substantiate these objections the house journal of the session of 1893, was read in evidence. By reference to this journal we find that the bill by its designation as House Bill No. 603, was introduced and read the first time under the following title (See page 372), "An act to repeal section No. 3368, chapter 46,

article 3, of the Revised Statutes of Missouri, 1889, entitled 'circuit courts,' and to enact a new section, to be numbered 3368, in lieu thereof, providing for the times and places of holding circuit courts in Lafayette, Saline and Pettis counties." On page 389, of the journal, the record recites, this same bill was taken up, "read second time and referred to committee on judiciary." At page 597, of the journal, the committee on judiciary reported to the house that they had carefully considered the bill and recommended that it pass, and it was then read and three hundred copies ordered printed. At page 643, the bill was taken up for engrossment, and on motion, it was amended by striking out all of the title thereof, and inserting in lieu thereof the following title: "An act to repeal an act approved February 14, 1893, entitled 'an act to repeal section 43 of the acts of 1892 (extra session), approved April 7, 1892, entitled "an act to redistrict the state into judicial circuits, and to fix the terms of court therein,"'" read and agreed to. The body of the bill was also amended at the same time, so as to make section 1 thereof read as it now appears in said act, and various changes in the times for holding of the courts in said county were made. These amendments were read and agreed to, and the question being, "Shall the bill as amended, be ordered, engrossed and printed," it was carried.

On page 708, the committee on engrossed bills reported that they found House Bill 603 "truly engrossed, and the printed copies thereof furnished the members are correct." Which report was duly read. On page 781 it appears, that by an aye and no vote the rules were suspended and the bill was taken up to be read a third time and put upon its passage and was carried. It next appears on pages 1025 and 1026 of the journal, that the senate reported the bill back to

the house with three amendments, numbers 1, 2 and 3, which made the bill read as it now appears in the session acts. These amendments were read, and three hundred copies ordered printed. At pages 1052 and 1053, these three amendments were severally called up, and concurred in by a vote of the ayes and noes. At page 1086, the committee on enrolled bills, number 603, and others, reported that they had carefully "compared the same and found them to be truly enrolled." The bill was then read at length and no objections being made, the speaker in the presence of the house, in open session, all other business being suspended, and before any other business was entertained, affixed his signature to the bill, and the chief clerk immediately presented the same to the senate, where it was signed by the president of the senate, and by the chief clerk was immediately presented in person to the governor, who approved it April 19, 1893.

The facts appearing from the journal entries clearly demonstrated that the bill passed as it originated in the house. It was then numbered House Bill number 603, and contained all the matter embraced in it on its final passage. No amendment was made save in the title. The identity of the bill was preserved through both houses. All the journal entries refer to the same bill by its number and it is beyond all controversy, that it was passed by both houses of the legislature.

As to the proposition that, because its title was amended in the senate, it became a senate bill and must begin anew its course as an original bill, we think it is opposed to all parliamentary usage and could and would only tend to unnecessary and burdensome delays in legislation, prevent salutary amendments, and would in no sense aid in preventing the mischiefs contemplated by the makers of the constitution.

There is no parliamentary law nor any provision

of the constitution requiring that an act shall retain the same title through all its stages in both houses. The title, though performing a most important function, is still not strictly a part of the act proper. *Walnut v. Wade,* 103 U. S. 683; *Plummer v. People,* 74 Ill. 362; *Binz v. Weber,* 81 Ill. 288; *Larrison v. Railroad,* 77 Ill. 11; *Railroad v. People,* 33 N. E. Rep. 173; *Cantini v. Tillman,* 54 Fed. Rep. 969; *Illinois v. Railroad,* 33 Fed. Rep. 730. Certainly when there is nothing to show such a change in the title as would mislead the legislature as to the subject of the act, it would not affect the identity or integrity of the act.

The practice in the British Parliament has long been to defer the adoption of the title until the bill was perfected, and not without the best of reasons, for in this manner the title was conformed to the changes made, and was an expression of the subject of the bill as finally passed. *Att'y Gen'l v. Rice,* 64 Mich. 385; Cushing's Law and Practice of Legislative Assemblies, sec. 2229.

A much more serious question, however, is presented in the objection that the provision of section 30 of article 4, of the constitution was not observed in the passage of this bill. This section of the constitution is as follows: "If a bill passed by either house be returned thereto, amended by the other, the house to which the same is returned shall cause the amendment or amendments so received to be printed under the same supervision as provided in the next preceding section, for the use of the members before final action on such amendments." Section 29 provides that the engrossing shall be under the supervision of a committee who shall report to the house in writing that the bill has been truly engrossed and that the copies furnished the members are correct.

When the amendments made in the senate were returned to the house, the journal shows that three hundred copies *were ordered printed*. It does not show affirmatively that they were printed before they were adopted in the house, but it does appear that the bill was afterwards enrolled. The point now for determination is simply this: Will the absence in the journal of a report by the committee on engrossment that these amendments were printed prior to their adoption, render the act void, or shall we indulge the presumption in the absence of an affirmative showing to the contrary, that the proceedings were in accordance with constitutional requirements?

While it is not to be denied that an enactment may be overthrown by the recitals of the journal when it clearly appears the constitution has been violated or ignored, still we do not think a mere failure of the journal to show every step required by the constitution will necessarily render void the law. While it is provided the amendments shall be printed under the supervision of the engrossing committee, it does not require a report as in section 29 to be made and spread on the journal. When this bill was enrolled, and then signed in the presence of the house in open session, and all other business was suspended, we think we are bound, in the absence of a recital of the journal to the contrary, to presume that this condition precedent had been observed.

It can hardly be presumed that the members of that house who voted against this bill were ignorant of the requirements of the constitution and neglected to avail themselves of this means of defeating a bill to which they were opposed, or, on the other hand, that its friends would knowingly risk its rejection by neglecting such a simple precaution. The presumption in favor of the correctness of official action attends the

action of the representatives of the people in the two houses of the general assembly.

This was the conclusion reached in *State ex rel. v. Mead*, 71 Mo. 272, and we see no reason for adding to, or departing from, what was so well said in that case, by the learned judge who prepared the opinion. *Supervisors v. People ex rel.*, 25 Ill. 181; *People v. Dunn*, 80 Cal. 211. We accordingly hold that it must be presumed that the constitution was obeyed and the amendments printed before final action thereon.

III. Again, it is said the act, if formally passed, is unconstitutional in that it imposes upon the judge of that circuit, a duty and authority different from that imposed and held by similar judges in the state and is a local and special act. All of these objections were fully considered and passed upon in *State ex rel. v. Hughes*, 104 Mo. 470, and the authorities reviewed, and an act similar in all its essentials to this act was held not local or special, but a general law and constitutional; and the question has been since re-examined and that case adhered to in *State v. Orrick*, 106 Mo. 111.

And the reasoning of those cases also disposes of the further contention, that, by special legislation, the practice in civil cases in reference to changes of venue, has been changed. As was said by the learned circuit judge in his opinion there is nothing in the act regulating practice or jurisdiction of courts; it merely provides, that the court granting a change of venue from any other county to Lafayette county, shall indicate to which place it shall be sent. The courts would have this power in the absence of such a provision and it is not a change of the general law on that subject.

IV. The remaining proposition is that the act is void, because it attempts to authorize municipal funds, raised by municipal taxation for municipal purposes, to be misapplied to the renting of a courthouse and clerk's

office for the use of the judicial department of the state government. The provision of the law with regard to this point is as follows: "The judge of the circuit court of said county shall select a suitable place for the holding of court at Higginsville, and for the offices of clerk, sheriff and juries of said court, and the place so selected shall be entered upon the record of said court, and shall thereafter be known and designated as 'the courthouse' in Higginsville and *the expense of renting and keeping the same shall be paid by the said city of Higginsville.*"

Before entering upon the discussion whether this last provision is unconstitutional, it should be decided whether, if so held, the remainder of the act can be sustained without this clause. In *Railroad v. Evans & Howard Brick Co.*, 85 Mo. 307, it was said, "Sometimes a statute is unconstitutional in part and constitutional as to the residue, and if the unconstitutional part is not inseparably connected in substance with that which is valid and complete in itself, and capable of being executed in conformity with the apparent legislative intent, regardless of that which is rejected, the unconstitutional part may be regarded as stricken out." *State ex rel. v. Pond*, 93 Mo. 635; *Gordon v. Cornes*, 47 N. Y. 608; *Allen v. Louisiana*, 103 U. S. 80.

We think this is now unquestionably the rule of construction in such cases. It certainly would be a reflection on the legislative department to say that the mere rental of a court room and for a clerk's office would be a serious consideration with the legislature when it was considering the necessity and advisability of establishing the courts at Higginsville, and that the payment of the expense by the city would have been a sufficient inducement to pass the act, or its refusal to do so any reason for defeating it. We are bound to presume the legislature was actuated by a desire to

The State ex rel. v. Field.

make the courts more accessible to the people of the county, and to enable them to attend them as litigants, jurors and witnesses with less expense and loss of time.

The clause of the constitution supposed to be violated by this clause is section 11 of article 10, which limits the power of cities and towns to tax for municipal purposes; but this is not a municipal tax. If a tax should be necessary under the clause in question it will be levied in pursuance of the act of the legislature for a state purpose, and not for the municipality. The courts are held by the officers of the state for the state and it is incumbent upon the legislature to provide for their maintenance.

There is no provision in the constitution that secures equality of taxation throughout the state. The provision requiring all property to be taxed in proportion to its value, does not meet the proposition under discussion. When once the tax is determined upon, then it must be laid in proportion to the values in the territory upon which it is levied, and it may be conceded that, for municipal purposes, it is limited by the section quoted; but, as already said, the tax, if any, to be raised under this act is a state tax and the legislature has the power and duty to provide for the state government, and it may lawfully use the agency of the city government to collect that tax.

The idea of equality of taxation has never obtained in this state. It is not feasible. From the foundation of the state the legislature has, in addition to the general tax, imposed the burden upon the several counties of building courthouses in the several counties in which to hold the state's courts. These courthouses have varied in cost as the taste and ability of the several counties was different. The state has also imposed upon the counties the duty of constructing roads, and upon cities, the public streets, and, since 1851, has

imposed upon the city of St. Louis the burden of assisting in the payment of the salaries of the judges of the circuit court, and, more recently, of the judges of the court of appeals.

In one sense this additional tax was local and unequal, but the power to provide by law for these salaries was vested in the legislature, and it has never been deemed the prerogative of this court to interfere with that discretion because it might not happen to accord with our notions of propriety and abstract right.

But it would not be a difficult task to show that the legislature has wisely put the increased burden upon those communities which required the increased services of the officers of the state. We deem it within the power of the legislature to impose a tax upon a particular subdivision or municipality of the state, when, in its judgment, it is for the benefit of that locality as well as the state at large; and, consequently, see no objection to its imposing this duty upon the city of Higginsville. *State ex rel v. St. Louis County Court,* 34 Mo. 546; *St. Louis v. Shields,* 52 Mo. 351; *State ex rel. v. Holladay,* 70 Mo. 137; *In re Apportionment Tax,* 78 Mo. 596; Cooley on Taxation [2 Ed.], pp. 142, 155, 166, 167; *Gordon v. Cornes,* 47 N. Y. 608.

With the exception of the last proposition discussed we have reached the conclusion arrived at by the learned circuit judge. But for the earnestness and ability with which the questions were pressed anew upon us, we should have been perfectly content with the opinion which he filed in the circuit court, and to which we are greatly indebted in our examination of the cause. The judgment of the circuit court refusing to issue the injunction, and holding the act of April 19, 1893, providing for the court in the fifteenth judicial circuit constitutional, is affirmed. All concur, BARCLAY in the result.