The Drainage Commissioners of North Fork Special Drainage District, Defendants in Error, *vs.* The Commissioners of Rector Special Drainage District, Plaintiffs in Error.

*Opinion filed February 17, 1915.*

1. Constitutional law—*who are corporate authorities of a municipality.* Corporate authorities of a municipality are authorities who are directly elected by the people to be taxed, or appointed in some mode to which they have given their assent.

2. Same—*constitution does not prevent enforcement of a legal obligation of a municipality without consent of tax-payers.* Sections 9 and 10 of article 9 of the constitution, which prohibit the General Assembly from delegating to persons other than corporate authorities the power to impose taxes for corporate purposes or to create debts against the municipality without the consent of the tax-payers affected, do not prevent the enforcement of a legal duty or obligation of a municipality without the consent of the tax-payers, even though a tax must be levied by the corporate authorities in consequence.

3. SAME—*General Assembly may require upper district to contribute proportionate cost of outlet of. lower district.* Under its constitutional authority to pass laws for the creation of drainage districts the General Assembly may require an upper district to contribute its share to the construction of an outlet by a lower district in proportion to the benefits received by the lands of the upper district, and when such duty is created it may be enforced by a petition for reimbursement by the lower district, and if the proceeding results in a judgment against the upper district, the corporate authorities must provide for its payment as in case of any other legal obligations.

4. SAME—*the act of 1913, with reference to apportionment of cost of construction between adjoining drainage districts, is valid.* The act of 1913, (Laws of 1913, p. 272,) to enable adjoining drainage districts to connect ditches and to provide for the apportionment of the cost of constructing the work, is not in violation of sections 9 and 10 of article 9 of the constitution, prohibiting the delegation to persons other than corporate authorities of the power to impose corporate taxes or create debts against the municipality without the consent of the tax-payers affected.

5. SAME—*when constitutional provision as to notice of a proceeding is satisfied.* In case of a proceeding to enforce an obligation of a drainage district, the constitutional provision securing to every one the right to have notice of any proceeding by which he may be deprived of his property, so that he may have an opportunity to defend, is satisfied by notice to the district as a corporation, and notice to the individual land owners is not required.

WRIT OF ERROR to the County Court of Hamilton county; the Hon. ISAAC H. WEBB, Judge, presiding.

W. F. SCOTT, and C. S. CONGER, JR., for plaintiffs in error.

J. H. LANE, and HARRY ANDERSON, for defendants in error.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The county court of Hamilton county organized the North Fork Special Drainage District of the counties of Hamilton and Saline on February 21, 1910, under the Farm

Drainage act, and organized the Rector Special Drainage District of the same counties on March 14, 1910, under the same act. The two districts were in the same general watershed, and the course of drainage was from the Rector district to and through the North Fork district. The plans, plats, surveys and specifications of the North Fork district were adopted and the location of its outlet was marked out, and the Rector district afterward made its plans with an outlet ending in the channel of Rector creek, a tributary of North Fork creek, which was intersected by the ditch of the North Fork district about seventy yards below the end of the Rector ditch. The Rector district completed its system of drainage on August 1, 1912, and the North Fork district completed its system on November 30, 1913, with its outlet ditch extending in a southeasterly direction from a point below the end to the Rector ditch, one and three-fourths miles, to the Gallatin county line, giving an outlet for the waters flowing through the system of drains of both districts. The ditch at the junction of Rector creek was 100 feet wide and 10 feet deep, and that width was increased at the terminus to 120 feet. The commissioners of the North Fork district filed a petition in the county court of Hamilton county for reimbursement by the Rector district of its just proportion of the expense of constructing the main outlet ditch in proportion to benefits received, alleging that the petitioner had made provision not only for the waters of the North Fork District but also for the waters of the Rector district at an additional cost of $52,-200, and that repeated application had been made to the commissioners of the Rector district to pay the just proportion of that district of the cost of the work, which the commissioners of the district had refused to do. The Rector district answered, admitting that the lands of the district were dominant to the North Fork district and that the waters from the main outlet of the Rector district flowed through the main outlet of the North Fork district but de-

nying that the systems of drainage were connected, and alleging that when the drainage system of the Rector district was completed, the lower part of Rector creek, and North Fork creek, with which it connected, afforded an ample outlet for the waters of the district. The issue was submitted to a jury and there was a verdict for $6852, on which judgment was rendered. The writ of error in this case was sued out to review the judgment.

The petition was filed under the act of 1913, to enable adjoining drainage districts to connect their ditches and drains, levees or other works, and to provide for the apportionment of the cost of the construction, operation and maintenance of the work of the drainage district where lands in an adjoining district are benefited thereby. (Laws of 1913, p. 272.) It is contended that this act contravenes the provisions of sections 9 and 10 of article 9 of the constitution, which prohibit the General Assembly from delegating the power of corporate or local taxation to persons other than the corporate authorities or to create a debt against a municipal corporation without the consent of the tax-payers affected. Corporate authorities are authorities of the municipality who are directly elected by the people to be taxed, or appointed in some mode to which they have given their assent. (*Givins* v. *City of Chicago,* 188 Ill. 348.) The argument is, that the act gives any district the right, through its commissioners, to make such outlet as they shall deem proper and at such cost and expense as they may see fit to incur, and then cause a tax to be levied upon the lands of another district without the consent of the commissioners or land owners of the district taxed, and counsel for the plaintiffs in error insist that the decision in *Morgan* v. *Schusselle,* 228 Ill. 106, applies to this act and demonstrates its invalidity. It was not decided in that case or any other that a legal duty or obligation of a municipal corporation cannot be enforced without the consent of the tax-payers of a municipality, although, as a

necessary consequence, a tax must be levied by the corporate authorities of the district. There are numerous duties and obligations which may be so enforced, such as the duty of a county or town to support its paupers, which may be enforced by another county or town performing the duty, by suit in any court of competent jurisdiction, and the duty which a town may enforce against a county to contribute to the cost of a bridge under the general duty of the county to construct and maintain bridges on the public highways. In the case relied upon by counsel the act gave to the commissioners of a drainage district the power to make bridges and culverts across any public highway for the use and protection of the work of the drainage district and for its sole and exclusive benefit, and the cost of the work was to be paid out of the road and bridge tax of the township or by a tax to be levied on the property in the township. Section 31 of article 4 of the constitution confers upon the General Assembly authority to create drainage districts, and in providing for the drainage of lands the General Assembly may require an upper district to contribute its share to the construction of an outlet in proportion to the benefits conferred upon the lands of the district, and where that duty is created it may be enforced by such a proceeding as is provided for. The law has created the duty, and provides that if there is a disagreement there shall be a determination by the court and a judgment, which becomes a legal charge against the district. It becomes the duty of the corporate authorities of the district to provide for the payment of the judgment as in the case of any other legal obligation, and the performance of that duty is not prohibited by either section 9 or 10 of article 9 of the constitution.

Again, it is argued that the act violates section 13 of article 4 of the constitution, providing that no act shall embrace more than one subject, which shall be expressed in the title, and that no law shall be amended by reference to

its title. We do not discover any fault or defect in the title, and the act does not amend section 42 of the Farm Drainage act or any other section but deals with a different subject.

Counsel say that section 2 of article 2 of the constitution, relating to due process of law, secures to everyone the right to have notice of any proceeding by which he may be deprived of his property so that he may have an opportunity to defend, and that the act attempts to give the commissioners of one district the right to create an indebtedness against another district, and obtain a judgment therefor, without giving the land owners any opportunity to be heard in defense of the suit. Perhaps the argument is not worthy of attention but it seems to be made in good faith. The constitutional provision is satisfied by notice to the district as a corporation.

The Rector district included 17,130 acres of land and the North Fork district about 25,000 acres. North Fork creek, in its natural state, was the only outlet for draining the lands, and it was so crooked and had become so filled up with trees, brush and logs, and was so obstructed by three dams, that it was insufficient and useless for that purpose. Three dams had been built in the creek to furnish water for stock and for the pumping station of a railroad, and the only feasible plan for a sufficient outlet was to dig a ditch, which was done. Right and justice were clearly with the petitioner and the evidence would have justified a larger verdict. In fact, from reading the record it appears to us that if any complaint could be made it should be by the petitioner that the verdict was disproportionate to the benefits received.

The judgment is affirmed.    *Judgment affirmed.*