(No. 12389.—Reversed and remanded.)

THE PEOPLE *ex rel.* The County of Franklin, Appellee, *vs.*
THE COUNTY OF WILLIAMSON, Appellant.

*Opinion filed December 18, 1918.*

1. CONSTITUTIONAL LAW—*power of the legislature to require
municipal corporation to perform duties resulting in taxation.* The
General Assembly may compel a municipal corporation to per-
form any duty which relates to the general welfare and security
of the State, although the performance of such duty will result in
taxation or create a debt to be paid by taxation.

2. SAME—*the act of 1909, relating to bridges on county lines,
is not invalid.* The provision of the Roads and Bridges law, as
amended in 1909, (Laws of 1909, p. 326,) fixing the liability of
counties for the cost of a bridge which will exceed $5000, over a
stream which is the boundary line, and requiring each county to
pay its proportionate share, is not in violation of sections 9 and 10
of article 9 of the constitution.

3. SAME—*there is no constitutional objection to leaving deter-
mination of question of building bridge to one county.* There is no
constitutional objection to the provisions of the Roads and Bridges
law, as amended in 1909, leaving the determination of the ques-
tion of building a bridge over a boundary stream to one county
and preventing the refusal of the adjoining county to join in the
work from obstructing the performance of the public duty to build
the bridge.

4. BRIDGES—*the Roads and Bridges act, as amended in 1909,
construed.* The Roads and Bridges act of 1909 (Laws of 1909,
p. 326,) contemplates that one county may determine whether a
bridge shall be constructed across a boundary stream, and, having
made an appropriation for its share of the cost, it may apply by
petition to any court of competent jurisdiction for an order to
compel the adjoining county to make an appropriation for its pro-
portionate share, but it does not confer upon the former county
the right to finally determine the kind and cost of the bridge and
to construct the same and then compel the other county to pay
its share.

5. SAME—*the act of 1909 contemplates a joint contract.* The
Roads and Bridges act, as amended in 1909, contemplates that
after one county shall have determined to build a bridge across
a boundary stream, shall have made its appropriation, and ob-
tained, with or without an order of court, an appropriation by the
other county for its share, then there shall be a joint contract for
the bridge, in which each county shall have a voice.

APPEAL from the Circuit Court of Williamson county; the Hon. BENJAMIN W. POPE, Judge, presiding.

GEORGE R. STONE, and WILLIAM H. WARDER, for appellant.

ROY C. MARTIN, State's Attorney, and W. F. SPILLER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Williamson county overruled the demurrer of said county to a petition filed by Franklin county for a writ of *mandamus* to compel the board of supervisors of Williamson county to appropriate its *pro rata* share of the cost of constructing a bridge across the Big Muddy river on the boundary line between the two counties, and the defendant having elected to stand by its demurrer, a writ was ordered as prayed for.

The facts alleged in the petition were, that Franklin county, on September 24, 1912, desiring to build a bridge across the Big Muddy river, which was the boundary line between the counties of Franklin and Williamson, the cost of which bridge would exceed $5000, the petitioner appropriated its share of the cost of constructing the same and caused plans and specifications therefor to be filed with the county clerk of Williamson county; that about the same date the petitioner passed a resolution appropriating $6000 as its share of the cost of erecting the bridge, and caused to be served upon the county commissioners of Williamson county a request to make an appropriation to pay its share for erecting the bridge; that the petitioner caused a notice to be posted that on December 14, 1912, the committee of the board of supervisors of Franklin county would receive bids for the construction of the bridge, and on said date that committee and a committee from Williamson county

met, and the committee from Williamson county refused to enter into the consideration of the proposition to build a bridge; that a contract was then entered into by the committee of Franklin county with the Vincennes Bridge Company to erect the bridge for $15,210; that in pursuance of the contract that company erected the bridge, which was received by the committee of Franklin county and was being used by the citizens of the two counties, and that Williamson county neglected and refused to make an appropriation for its share of the cost of building the bridge on the basis of the assessed value of property, real and personal.

The demurrer was general, setting up as special causes of demurrer that the statute contemplates that the petition shall be filed immediately after the county desiring a bridge shall have made its appropriation and before the letting of the contract or building the bridge, and if that construction of the statute is not correct it is unconstitutional and void.

The rights of the parties were fixed by the Road and Bridge act of 1883, (Laws of 1883, p. 136,) as amended in 1909. (Laws of 1909, p. 326.) That act fixed the liability of adjoining counties for the cost of a bridge equaling or exceeding $5000 over a stream forming a boundary line between the counties, in proportion to the taxable property of the respective counties, according to its assessed value. It provided that when any county desired to build a bridge across any stream which was the boundary line, the cost of which bridge would equal or exceed $5000, and the county desiring to construct such bridge had appropriated its share of the cost of constructing the same, it should be the duty of the other county to make an appropriation for its proportion of the cost of the bridge, and if the other county failed or refused to make such appropriation any court of competent jurisdiction should issue an order to compel such county to make such appropriation upon a proper petition for that purpose. It further provided that for the purpose of building such a bridge it should be lawful for county

boards of such adjoining counties to enter into joint contracts, and the county boards might be proceeded against jointly by any parties interested in the bridge for any neglect of duty in reference to the bridge or for any damage growing out of such neglect, and if a county board, after reasonable notice in writing from another county board, should neglect or refuse to build any such bridge when any contract had been made in regard to the same, it should be lawful for the county board so giving notice to build the same, to recover by suit one-half of the expense or the amount agreed upon, with costs of suit and interest from the time of the completion thereof, from the county board so neglecting or refusing.  These provisions of the statute contemplated that one county might determine whether a bridge should be erected across any stream which was the boundary line between such county and another county, and, having made an appropriation of its share of the cost of building the bridge, might apply by petition to any court of competent jurisdiction, which should issue an order to compel the other county to make an appropriation for the purpose of building the bridge.  They did not confer any authority upon the county which had determined to build the bridge, to finally determine the kind and cost of the bridge and to construct the same and compel the other county to pay for its proportion of it.  If that had been the intention of the General Assembly it certainly would have given expression to it.  If the county desiring to build the bridge applied to a court for an order to compel the other county to appropriate its share, it would have been required to prove the fact that the cost of the proposed bridge equaled or exceeded $5000, and the court in making the order would necessarily determine that question and whether the proposed bridge would be reasonable in kind and cost.  After the appropriations had been made by both counties, with or without an order of court, the law contemplated a joint contract for the construction of the bridge, in which each county

would have a right to a voice if it should see fit to exercise its privilege.

One special ground of demurrer was based on sections 9 and 10 of article 9 of the constitution, under which it has been uniformly held that the General Assembly cannot create a debt against a municipal corporation for corporate purposes or impose upon it an obligation which can be met only by the levy of a tax. (*People* v. *Mayor,* 51 Ill. 17; *Morgan* v. *Schusselle,* 228 id. 106; *People* v. *Block,* 276 id. 286.) What constitutes a corporate purpose of a municipal corporation within those provisions of the constitution was first explained in *People* v. *Mayor, supra,* in construing a similar provision of the constitution of 1848, where it .was said that there may be cases where the General Assembly, without the consent of the corporate authorities, might impose taxes local in their character if required for the general good government of the State, because such taxes would not be merely and only for corporate purposes, and reference was made to a case of insurrection or the failure of a city to furnish reasonable security to life and property. That case and the doctrine stated were adverted to in *Lovingston* v. *Wider,* 53 Ill. 302, and *Wider* v. *City of East St. Louis,* 55 Ill. 133, but in each of those cases the purpose of taxation was purely local, having no element of general public interest. In the case of *City of Chicago* v. *Manhattan Cement Co.* 178 Ill. 372, sections 9, 10 and 12 of article 9 were relied upon as prohibiting the enactment of the law, which would impose a debt or obligation upon the city of Chicago to pay for cement destroyed by a mob, and it was held that the General Assembly may compel taxation by a municipal corporation for the performance of duties as an agency of the State government and to discharge duties and obligations properly resting upon it as such, and the construction in the case of *People* v. *Mayor, supra,* was approved. The General Assembly may compel a municipal corporation to perform any duty which relates to the gen-

eral welfare and security of the State although the performance of the duty will result in taxation or create a debt to be paid by taxation. It may require a county to build a court house for the administration of justice and provide offices and agencies for the collection of the revenue of the State, to build and maintain a jail for the confinement of offenders against the laws of the State, to support paupers, or to establish such regulations as are necessary for the public health and safety and to provide a force to make the regulations effective, although the requirement in either case would result in the levy of a tax. An act requiring Cook county to pay the expense of summoning jurors for the municipal court and the expenses of jury commissioners did not violate sections 9 and 10 of article 9. (*City of Chicago* v. *Knobel,* 232 Ill. 112.) Roads and bridges are not merely for local use but are for the use and accommodation of all citizens of the State, and it is within the power of the General Assembly to provide that counties shall build roads and bridges and that a county shall pay its proportionate share of the cost of a bridge across a stream on the boundary line between it and another county. The necessity for such a bridge cannot be left to a divided authority, so that the duty enjoined by law shall not be performed, and there is no constitutional objection to leaving the determination of that question to a county upon which the duty has been enjoined and providing that the refusal of an adjoining county shall not prevent or obstruct the performance of the public duty.

The petition in this case did not show that the provisions of the statute had been followed by the petitioner, and the court erred in overruling the demurrer. Therefore the judgment is reversed and the cause remanded, with directions to sustain the demurrer.

*Reversed and remanded, with directions.*

Mr. CHIEF JUSTICE DUNCAN took no part in this decision.