(No. 11902.—Judgment reversed.)

The Chicago, Milwaukee and St. Paul Railway Company, Appellant, vs. The County of Lake et al. Appellees.

*Opinion filed February 20, 1919—Rehearing denied April 2, 1919.*

1. Municipal corporations—*the legislature cannot create debt against municipality for merely local purposes.* Under sections 9 and 10 of article 9 of the constitution the legislature cannot create a debt against a municipal corporation for merely local purposes, requiring taxation without the consent of the tax-payers affected.

2. Same—*delegation of taxing power to municipalities does not deprive State of exercise of police power.* The delegation of taxing power to municipal corporations does not divest the State of its sovereign rights, among which is the exercise of police power.

3. Same—*when debt is created against municipality for protection of general public and not for local corporate purpose.* Where the State, acting through its authorized agency, requires the alteration of a dangerous railroad grade crossing by the construction of a subway and apportions a part of the cost to the municipality in which the crossing is situated, the debt created against the municipality is not for a local corporate purpose but is for the protection of the general public. (*People* v. *Block,* 276 Ill. 286, distinguished.)

4. Same—*when State may create debt against municipality for protection of general public.* While sections 9 and 10 of article 9 of the constitution prohibit the State from creating a debt against a municipal corporation for local corporate purposes necessitating the levy and collection of a tax, they do not prohibit the State from imposing a liability where the public safety and welfare require it and the municipality fails and neglects to act.

5. Public utilities—*under police power the State may require separation of railroad grade crossings.* A railroad is a public utility, and the State may, in the exercise of its police power, where the public safety demands it, require the separation of grade crossings for the preservation of human life and protection of property.

6. Same—*legislature may delegate power to determine whether a railroad grade crossing is dangerous.* The power to determine whether a particular railroad grade crossing is so dangerous to life and property of the public as to require a separation of grades may be conferred on an administrative body such as the Public Utilities Commission and is not a delegation of legislative authority.

Appeal from the Circuit Court of Sangamon county; the Hon. E. S. Smith, Judge, presiding.

S. D. Scholes, and O. W. Dynes, (Burton Hanson, of counsel,) for appellant.

Tenney, Harding & Sherman, and E. M. Runyard, (George T. Rogers, of counsel,) for appellees.

Mr. Justice Farmer delivered the opinion of the court:

Ralph J. Dady, describing himself as attorney at law and State's attorney of Lake county, Illinois, filed his petition with the Public Utilities Commission of Illinois on October 22, 1914, reciting that the Chicago, Milwaukee and St. Paul Railway Company is a public utility subject to regulation by said commission, and that the public safety required the alteration of the grade crossing of said railway at Gurnee, Illinois. The petition stated the highway at the point crossed by the railway was one of the most traveled roads in the county and had been selected by the county as a State aid highway first to be improved. The petition stated the tracks were elevated at the point where they crossed said highway, that the approaches were steep, and that trees, shrubbery and buildings shut off the view of the tracks from the highway. The defendant railway company answered the petition, denying the facts alleged in the petition called for or required the alteration of the grade crossing asked. November 10, 1914, a hearing was had, at which petitioner and the railway company were represented, and evidence was heard as to the condition of the crossing, etc. December 30, 1914, the commission addressed notices to the county clerk of Lake county and to the clerk of the board of highway commissioners of Warren township, in said county, stating that it appeared they were necessary parties to the pending proceeding and notified them to appear at a hearing of said commission to be

had January 14, 1915. At said hearing there were present the petitioner, the railway company by attorney, the clerk of the town of Warren, two highway commissioners of said town and the county clerk of Lake county. At this hearing, upon the suggestion of the commission, the petitioner asked that time be given the county of Lake and the town of Warren to become and be made parties petitioner to the proceeding. The motion was allowed and the hearing continued to March 15, 1915.

The board of supervisors of Lake county passed a resolution February 11, 1915, reciting the pending of the proceedings before the commission and the nature thereof and authorizing the employment of an attorney to represent said county in said proceedings, and that he be instructed and authorized to use every means to prevent the construction of a subway at the railway crossing or the apportionment and assessment of any exorbitant apportionment of the cost upon Lake county. Pursuant to such resolution James G. Welsh was employed by said county, and on March 16, 1915, he filed his appearance for said county, to which was attached a copy of the resolution of the board of supervisors of February 11, 1915, and asked the commission for twenty days' time in which to file objections of the county to the petition filed by Dady. Leave was granted as asked, and on April 6, 1915, the county of Lake filed its answer, stating that the public would be better protected and the public interest better served by the placing of gates at such crossing than by the building of a subway, and asking that the county of Lake and town of Warren be made parties defendant to the petition. April 22, 1915, the board of supervisors of Lake county passed a second resolution, reciting the pending of the proceeding before the commission and stating it was the sense of the county board that said crossing was important and dangerous and should be altered by the construction of a subway, and authorizing their attorney, James G. Welsh, to enter the appearance of the

county as a co-petitioner and use all means to secure an alteration of said crossing by the construction of a subway, and to also keep as low as possible any assessment of costs which might be levied against said county for the construction of the improvement.

On December 21, 1915, a hearing was had before the commission, at which were present the petitioner, Dady, the railway company by counsel, the three highway commissioners of Warren township, the town clerk of said township and the secretary of the State highway commissioners, who had been made a party. It does not appear the county of Lake was represented, but the commission stated that notice of said hearing was given the attorney representing Lake county November 23, 1915. Testimony was heard at this hearing on the proposed separation of grades. April 20, 1916, the commission entered its order for a separation of grades and set a hearing for May 10, 1916, to consider the apportionment of costs for such change. At the hearing on May 10, 1916, the petitioner, the railway company, the county of Lake and the town of Warren were all represented by counsel. The estimate of the cost of the improvement, based upon plans agreed upon, was $30,415. Evidence was heard as to the resources and assessed valuation of property both in the town of Warren and in the county of Lake. The proportion of the cost of the improvement the railway company, the town of Warren and the county of Lake should bear was discussed and the division of costs of like improvements or changes in grade between railway companies and different political subdivisions in ten different States was introduced. On October 5, 1916, the commission entered an order finding the cost of the proposed work to be approximately $30,000, and charged the county with fifteen per cent, the town with twenty-five per cent and the railway company with sixty per cent of such cost. Immediately after the entry of such order the county and town filed a petition for leave to in-

tervene as parties defendant and oppose the petition of Dady and objected to the proportion of the cost to be borne by them. April 17, 1917, the commission denied said petition, which was treated as a petition for a rehearing, and recited that by an error the order of October 5, 1916, charged the county with fifteen per cent and the town with twenty-five per cent of the cost, whereas such order should have been that the county and town each pay twenty per cent of the cost, and entered an order accordingly. The county and town filed a further petition for a rehearing upon the order of the commission denying their petition of April 17, 1917. This was denied by the commission. From such orders the county and town appealed to the circuit court of Sangamon county, where the orders of the commission were reversed. Appellant, the Chicago, Milwaukee and St. Paul Railway Company, has perfected an appeal to this court from the judgment of the circuit court.

There does not seem to us any merit in the contention of appellees that the orders were made without their being parties to the proceeding and without their having an adequate opportunity to be heard.

The crossing in question is in Gurnee, Illinois, a small unincorporated village of about two hundred population, a station on appellant's line in Lake county, some thirty-six miles north of Chicago.

The principal question presented for our determination is the authority given the commission by section 58 of the Public Utilities act to apportion the cost of abolishing grade crossings or the separation of such grades between a railroad and the county and township. Section 58 in part is as follows: "The commission shall also have power, after a hearing, to alter or abolish any grade crossing, heretofore or hereafter established, when in its opinion the public safety requires such alteration or abolition; or to require a separation of grades at such crossing; or to require a separation of grades at any proposed crossing where a pro-

posed public highway may cross the tracks of any railroad or railroads; and to prescribe, after a hearing of the parties, the terms upon which such separation shall be made and the proportions in which the expense of the alteration or abolition of such crossings or the separation of such grades shall be divided between the railroad or street railroad companies affected, or between such companies and the State, county, municipality or other public authority in interest."

Appellees contend that section violates sections 9 and 10 of article 9 of the constitution, which provide that municipal corporations may be vested with authority to levy and collect taxes for corporate purposes, and that the General Assembly shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes. It has been held many times by this court that those provisions prohibit the legislature from creating a debt against a municipal corporation for merely local purposes, which is required to be paid by taxation without the consent of the tax-payers affected. (*Morgan* v. *Schusselle,* 228 Ill. 106, and cases there cited.) That case was referred to in *North Fork Drainage District* v. *Rector Drainage District,* 266 Ill. 536, where it was said: "It was not decided in that case or any other that a legal duty or obligation of a municipal corporation cannot be enforced without the consent of the tax-payers of a municipality, although as a necessary consequence a tax must be levied by the corporate authorities of the district." In that case the North Fork Drainage District constructed an outlet through which the water from the Rector district passed, and the former filed its petition in the county court for reimbursement by the Rector district of its proportion of the cost, based upon benefits received. The petition alleged that the outlet was constructed not only for the waters of the North Fork district, but also to provide an outlet for the waters of the Rector district at a large additional cost. The proceeding

was had under the act of 1913. (Laws of 1913, p. 272.) The county court gave judgment for the petitioning district, and it was on appeal to this court insisted the act of 1913 was in violation of sections 9 and 10 of article 9 of the constitution. In addition to the language above quoted, the court said, in substance, that the law created the duty upon and the judgment was a legal charge against the Rector district, which the corporate authorities were required to provide for the payment of as in the case of any other legal obligation, and the performance of the duty was not prohibited by the constitution.

The case of *People* v. *Block,* 276 Ill. 286, involved the question whether the commissioners of a drainage district could impose the burden on the commissioners of highways to build a bridge over the drainage ditch where it was cut across a public highway. The ditch was made for the benefit of the drainage district,—a purely local corporate purpose,—and was not in any sense for the public benefit.

A railroad is a public utility, and the State may in the exercise of its police power, and it is its duty where the public safety demands it, require the separation of grade crossings for the preservation of human life and the protection of property. The power to determine whether a particular grade crossing is so dangerous to life and property of the public as to require a separation may be conferred on an administrative body and is not a delegation of legislative authority. In *City of Chicago* v. *M. & M. Hotel Co.* 248 Ill. 264, it was said: "All of the authorities agree that the constitution supposes the pre-existence of the police power, and its construction must be with reference to that fact." In the same case it was said the mere delegation of the taxing power to municipalities did not divest the State of its sovereign rights, among which is. the exercise of the police power.

The cost apportioned to appellees by the State, acting through its authorized agency, was not for a local "corpo-

344 C., M. & St. P. Ry. Co. *v.* Lake County. [287 Ill.

rate purpose," but the improvement for which a part of the cost was apportioned to appellees is for the protection of the general public. That is a matter in which the State is interested in its governmental capacity, and while the State may not deprive a municipality of its discretion in incurring expense for improvements of a local corporate character, such municipality cannot stand in the way of the State's exercise of its powers for the preservation of life and the promotion of the public welfare. When the State acts in cases where the exercise of its powers are necessary, as where the safety of the general public demands the action, it becomes the duty of the local authorities to provide the means for complying with the order and requirement "as in the case of any other legal obligation, and the performance of that duty is not prohibited by either section 9 or 10 of article 9 of the constitution." *North Fork Drainage District* v. *Rector Drainage District, supra.*

The statute authorizing one county to compel another county to appropriate money to pay its *pro rata* share of the cost of constructing a bridge over a river forming the boundary line between the two counties was considered in *People* v. *Williamson County,* 286 Ill. 44. It was contended in that case the statute violated sections 9 and 10 of article 9 of the constitution. In the opinion the court discusses what is a corporate purpose of a municipality and refers to a number of cases dealing with the sections of the constitution referred to. The court said: "The General Assembly may compel a municipal corporation to perform any duty which relates to the general welfare and security of the State, although the performance of the duty will result in taxation or create a debt to be paid by taxation," and illustrations are given of duties the performance of which may be compelled by the State although they require a tax to be levied and collected.

The evidence abundantly justified the State's action in the interest of public safety and welfare. The crossing was

a very dangerous one.  The railroad tracks are reached by a steep grade from one direction and by a slight grade from the other.  The view of the tracks is obstructed by trees and other objects until a person crossing the tracks gets close to them.  The death of one man and of a number of horses had been caused there and others had narrowly escaped.  The highway and crossing were extensively used by the general public by wagon and other vehicles.  On Sundays as many as a thousand automobiles pass over the crossing in one day.  In the neighborhood of a hundred persons use the highway and crossing in delivering milk at the station, and several children have to pass over the crossing going to and from school.  Eighty trains a day pass over the crossing, only eight of which stop at the station of Gurnee.  The board of supervisors of Lake county adopted a resolution April 22, 1915, that a subway should be constructed and instructing their attorney to endeavor to secure the abolition or alteration of the crossing by the construction of a subway, and further instructing their attorney to use his best efforts to keep the cost, if any, assessed against the county as low as possible.  Some of the officers of the town of Warren testified the crossing was a very dangerous one and they were in favor of a subway.

While the constitutional provisions referred to prohibit the State from creating a liability against a municipal corporation for local corporate purposes, the discharge of which necessitates the levy and collection of a tax, they do not prohibit the State from imposing a liability where the public safety and welfare require it and the municipality fails and neglects to act.  "Roads and bridges are not merely for local use but are for the use and accommodation of all citizens of the State." (*People* v. *County of Williamson, supra.*)  Cases holding the General Assembly may not impose a liability upon a municipal corporation which necessitates the levy and collection of a tax where the im-

provement is for a purely local corporate purpose wholly for the benefit of the municipality are not controlling.

The judgment of the circuit court is reversed and the orders of the Public Utilities Commission are affirmed.

*Judgment reversed and orders affirmed.*