**HERNDON, Judge, v. ANDERSON et al.**

No. 24165.   Sept. 26, 1933.

F. E. Chappell, McKeever, Elam, Stewart & McKeever, R. E. Owens, and Robert Burns, for plaintiff in error.

Winfield Scott, James A. Ingraham, Otjeu & Carter, and W. L. Farmer, for defendant in error.

Thos. J. Horsley, amicus curiae.

McNEILL, J. This action involves a protest against the payment of the salary of F. W. Herndon, judge of the superior court of Garfield county.

The parties will be referred to as they appeared in the trial below. Plaintiffs, as taxpayers of Garfield county, filed with the county clerk of said county their protest to the payment of the salary of any of the officials of said superior court of said county for the reason that the law creating said office, being House Bill No. 175, S. L. 1915 (c. 20) or section 3102, C. O. S. 1921, is unconstitutional in that said laws is a local and special law and violates section 59, art. 5, of the Constitution of the state of Oklahoma, and section 46 (b), art. 5, thereof.

This protest was filed before the board of county commissioners. The county commissioners denied said protest, and an appeal therefrom was taken to the district court of said county.

The trial court held that section 3102, C. O. S. 1921, being section 1, Session Laws of 1915 (c. 20), creating and establishing a superior court, was valid; but that section 3111, C. O. S. 1921, which provided that the salary of the judge of said court should be paid out of the court fund of the county in which said superior court is located, was invalid.

The stipulation, together with the objections thereto as shown by the record, is as follows:

"Mr. Otjen: It is stipulated by and be-

tween the parties, appellants and respondent, F. W. Herndon, judge of the superior court, that the respondent filed claim No. 5763 against Garfield county, Okla., claiming as salary as judge of the superior court of Garfield county for the month of April, 1932, the sum of $333.33;

"That this claim was filed by the county clerk on April 14, 1932;

"That to this claim, protest of appellants was filed as shown by the record in this case;

"That in the passage of what is known as House Bill 175 in the Session Laws of Oklahoma of 1915, being set out in the Compiled Laws of Oklahoma at section 3102, Statutes of 1921, that no notice or publication of the intention to introduce such an act in the Legislature of the state of Oklahoma was made and no publication of the intention to introduce such act was made or had prior to the passage thereof.

"It is stipulated by and between the appellants and the respondent, F. W. Herndon, judge of the superior court, that the respondent was appointed judge of the superior court of Garfield county June 3, 1931, by the Governor of the state of Oklahoma, and has been occupying the position of judge of the superior court from that date to the present time.

"It is stipulated between the appellants and F. W. Herndon, judge of the superior court, that if the court is legally established, which the appellants deny, that said F. W. Herndon is the duly appointed, qualified and acting judge of said court.

"It is stipulated that the appellants do not contend that the funds were not available for the payment of the claim.

"Mr. Stewart: To which stipulation, the appellee, Frank Herndon, judge of the superior court of Garfield county, Okla., expressly reserves his objection to the introduction of any evidence in this court bearing upon the constitutionality of the act in question, his contention being that the district court jurisdiction is limited to the original jurisdiction of the board of county commissioners of Garfield county, and that said board had no jurisdiction to determine the constitutionality of this act, and that this court has no jurisdiction in this case.

"The Court: The objection in each of these cases to the jurisdiction will be taken and held and reserved by the court until the case is heard and passed upon. The ruling upon the objection will be reserved for the present.

"Mr. Otjen: The appellants contend that at the time of the passage of the act known as House Bill 175, Session Laws of Oklahoma 1915, that seven of the counties of the state of Oklahoma came within the population limit of the bill, were it not for the qualification in the bill as to the city population that the 1910 federal census, being the federal census preceding the passage of this act, showed the population qualification in the bill as to the city population that the 1910 federal census, being the federal census preceding the passage of this act, showed the populations of these counties as follows:

"Tulsa County 34,995
"Muskogee County, 52,743
"Pottawatomie County, 43,595
"Garfield County, 33,050
"Pittsburg County, 47,650
"Caddo County, 35,685
"Lincoln County, 34,779

"That of the seven counties, but three, being Tulsa, Muskogee and Pottawatomie, had the city required under the terms of the act.

"Mr. Stewart: To which statement, the appellee, Frank Herndon, objects for the reason that said tendered information is incompetent, irrelevant and immaterial, and for the further reason that said act—

"The Court: I understand it is offered as a statement of counsel and not as evidence. It is not offered as evidence. It is no part of the stipulation, and merely a statement of counsel.

"Mr. Otjen: Yes, sir."

Plaintiffs, being the defendants in error, discuss their contentions under the following propositions:

"1. Upon appeal from an action of the board of county commissioners to the district court, the district court acquires no greater jurisdiction than possessed by the board of county commissioners, and where the question of the constitutionality of a statute is presented to the board of county commissioners and an appeal is taken to the district court from the decision of the board of county commissioners, the district court is without jurisdiction to pass upon the constitutionality of the law in question.

"2. That part of the Act of the Legislature approved Feb. 10, 1915, H. B. No. 175, Acts of 1915, sections 3102 and 3111, establishing superior courts and providing for the salary of the judge of said court, and the payment thereof, in counties having a population of 33,000 or more, and not exceeding 80,000 and having a city therein with a population of 18,000 and not exceeding 50,000, as now or hereafter shown by the preceding federal census, is not repugnant to section 59, art. 5, of the Constitution of Oklahoma, nor is it repugnant to section 32, art. 5, nor section 46 (b) of article 5 of said Constitution."

In brief, it was the theory of the trial

court that said superior court is not a county court nor a part of the county government; that the superior court was a state court of general jurisdiction; that any act which establishes a court of general jurisdiction inferior only to the Supreme Court is general in its nature; that as a consequence, notice of publication of such act of the Legislature was not necessary; that the Legislature could establish in a given county a court of general jurisdiction by a general law; that such provision would be valid; that because said court is a state court and of general jurisdiction and not a county institution, the state must pay the salary of said court; that it was arbitrary, unreasonable and discriminatory to place the burden of maintenance of said court on a particular county.

At the very threshold we free this case from all technical embarrassments and consider the constitutionality of the act creating the superior court. In considering the constitutionality of a legislative enactment, "We must maintain consciences, void of offense, whatever we do or omit to do". Prothro v. Orr, 12 Ga. 36, 40.

The Supreme Court of Missouri, in Ex parte Loving, 77 S. W. 508, said:

"In State ex rel. v. Aloe, 152 Mo. 477, 54 S. W. 496, it was very clearly and tersely stated: 'When the validity of a statute is drawn in question, the court approaches the subject as one involving the gravest responsibility, and to be considered with the greatest caution. The General Assembly is presumed to have been as careful to observe the requirements of the Constitution in enacting the statute as the court in applying it. Every presumption is to be indulged in favor of the validity of the act, and that presumption is to continue until its invalidity is made to appear beyond a doubt'. To the same effect is State ex rel. v. Pike County, 144 Mo. 277, 45 S. W. 1098, where it is said: 'It is the duty of the courts to uphold a legislative act unless it plainly and clearly violates the Constitution, and, if its language is susceptible of a meaning that will remove the objections to its validity, such interpretation should be adopted. "A legislative intent to violate the Constitution is never to be assumed if the language of the statute can be satisfied by a contrary construction." Endlich on the Interpretation of Statutes, sec. 179. It is our duty to uphold the act unless it plainly and clearly violates the fundamental law of the state, and, if its language is susceptible of a meaning that will remove the objections to its validity, such interpretation be adopted'."

Superior courts are being maintained in the following counties: Pottawatomie, Creek, Muskogee, and Garfield. The constitutionality of the act has heretofore been decided adversely to the defendants in error. See Burks v. Walker, 25 Okla. 353, 109 P. 544; Chickasha Cotton Oil Co. v. Lamb & Tyner, 28 Okla. 275, 114 P. 333; Chicago, R. I. & P. Ry. Co. v. Carroll, 114 Okla. 193, 245 P. 649.

The first three of the foregoing cases were considered and reviewed by this court in the case of Levine v. Allen, 96 Okla. 252, 221 P. 771. in considering the creating of the court of common pleas located in the city of Tulsa. In that case the court announced the following rule in paragraphs 1 and 2 of the syllabus:

"1. The power of the Legislature to create courts inferior to the Supreme Court is without limitation except as limited by section 59, art. 5, Williams' Constitution, which provides: 'Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable no special law shall be enacted.'

"2. Section 1 of chapter 51, Sess. Laws 1923, creating a court of common pleas in all counties of the state having a city therein of over 72,000 and not more than 90,000 population, according to the last preceding federal census, defining its jurisdiction and prescribing the number and qualification of its judges, does not violate section 59, art. 5, Williams' Constitution."

In the body of the opinion, this court said:

"The act involved in Chickasha Cotton Oil Co. v. Lamb & Tyner was passed by the Legislature after it had observed all the requirements of the Constitution relating to the enactment of special or local laws, and, therefore, it was not necessary to determine whether the act was general or local and special in its nature in order to pass upon its validity."

We find nothing arbitrary and capricious in the act in making differences in population as the proper basis for classification for the creation of superior courts in the respective counties of the state. The classification appears to be reasonable and appropriate and bears a rational relationship to the subject-matter. The object which was sought to be attained reflects good faith. No narrow margin has been fixed. There is a substantial difference in population. It is marked with no indiscriminate classification. It is general in its application and is not essentially local or special. There is substantial merit in the classification. This was left to legislative discretion.

The act which created the superior court provided for such a court in counties having a population between 33,000 and 80,000. It was urged in the argument that this was an arbitrary classification and that counties with a population exceeding 80,000 would be unable to have a superior court and that no provision had been made for higher brackets. However, the classification as made was exclusively within the province of the Legislature. It might be anticipated that the Legislature would provide some other form of relief, if necessity required it, for such counties in the way of an additional district judge or by creating some other court in such county to take care of the business necessitated by the increase of such population. This is no supportive reason to suggest against the validity of the act in question.

The serious question presented by this record is whether the respective counties can be compelled to bear the burden of maintaining a superior court created by the Legislature, or whether this burden should be placed upon the state at large. This question involves the right of the Legislature to impose taxes between the general public and a political subdivision of the state.

This question is entirely legislative and not judicial. The power of taxation and the power to apportion taxes are indentical and inseparable. People v. Brooklyn, 4 N. Y. 419. The court cannot control or review this exercise. Steiner v. Sullivan, 74 Minn. 498. To do otherwise amounts to mere dictum by the court. A county being an involuntary, subordinate political subdivision of the state, created to aid in the administration of governmental affairs of said state, and possessed of a portion of the sovereignty, has no inherent powers, but derives those powers solely from the state. All of the powers intrusted to it are the powers of the sovereignty which created it. Its duties are likewise the duties of the sovereignty. Board of County Commissioners of Greer County v. Watson, 7 Okla. 174, 54 P. 441. It cannot impose taxes; that power is derived from the state. See Amos v. Mathews (Fla.) 126 So. 308. The power to impose taxes is vested in the Legislature of the state. The apportionment of that tax is included in the power to impose taxes. Gordon v. Cornes et al., 47 N. Y. 608. The Supreme Court of the U. S. in the case of County of Mobile, State of Alabama, v. Kimball, 102 U. S. 691, 703, 26 L. Ed. 238, considered the question of the act of the Legislature of

Alabama 1867, providing for the improvement of the river harbor and bay of Mobile. It was urged that the act was invalid, and that the expenses of the work authorized by it could not, under the Constitution of the state, be imposed upon the county of Mobile, the work being for the benefit of the whole state. Mr. Justice Fields delivered the opinion of the court. In the opinion it was said:

"The objection to the act here raised is different from that taken in the state court. Here the objection urged is that it fastens upon one county the expense of an improvement for the benefit of the whole state. Assuming this to be so, it is not an objection which destroys its validity. When any public work is authorized, it rests with the Legislature, unless restrained by constitutional provisions, to determine in what manner the means to defray its cost shall be raised. It may apportion the burden ratably among all the counties, or other particular subdivisions of the state, or lay the greater share or the whole upon that county or portion of the state especially and immediately benefited by the expenditure."

See, also, Borrowdale v. Board of County Commissioners of Socorro County (N. M.) 163 P. 721.

This provision finds support in the case of Steiner v. Sullivan, supra. In that case, the Supreme Court of Minnesota considered the act to increase the compensation of the judges of the district court of Ramsey county, being the county in which the city of St. Paul is situated, which act provided that Ramsey county should pay to each of the judges of said district court the sum of $1,500 annually. Mr. Chief Justice Start delivered the opinion of that court and held that the act was constitutional. In that opinion the court said:

"I. The appellant's first contention is that the act imposes a special tax on the county of Ramsey, to pay extra compensation to the judges of the Second judicial district, which is identical in territorial area with the county of Ramsey, and is therefore in conflict with article 9, sec. 1, of the state Constitution, which, so far as here material, provides that all taxes to be raised in this state shall be as nearly equal as may be. * * *

"If the purpose for which a tax is levied be for the general public weal, and concerns and benefits the whole of the people of the state substantially alike, then the state should bear the entire burden of the tax. If the purpose be one which primarily benefits particular political subdivisions of the state, the whole burden may be placed

upon them, although the state at large be incidentally benefited thereby.

"Again, when the purpose for which taxes are to be levied is primarily for the general benefit of the whole state, and it also directly benefits some particular locality or district to a greater extent than it does the other localities of the state, the Legislature may impose such portion of the burden as it deems fair and equal upon the locality specially benefited. Whether the burden of taxation shall be so apportioned in a given case, and upon what basis, is a legislative question, which cannot be reviewed by the courts, unless it is clearly manifest that the action of the Legislature in the premises was arbitrary and the tax unequal. Guilder v. Town of Otsego, 20 Minn. 74 (Gil. 59) ; Maltby v. Tautges, 50 Minn. 248, 52 N. W. 858 ; Cooley, Tax'n, 153.

"The appellant does not question these propositions. * * *

"His position is, in brief, that the judges of the district courts of the state are state officers, and belong to the judicial department of the state government; that it is as incumbent upon the state to pay their salaries out of the state treasury as it is to provide compensation for the members of the executive and legislative departments ; that it is the duty of the state to provide the means to keep the machinery of each of the departments in operation ; hence the salaries of the judges of the district court of Ramsey county are a charge exclusively on the state treasury.

"It might as well be claimed that the cost of keeping the court open must be paid by the state. It is true that the judges of the district court belong to the judicial department; that it is incumbent on the state to provide for the payment of their salaries ; but it does not logically follow that it can make the payment of their salaries a charge only upon the state treasury. There is nothing in the Constitution to prevent the Legislature from making the salaries of the judges of the district courts a charge upon their respective districts. The argument of appellant, pushed to its logical conclusion, would require the Legislature to make the compensation of judges of the probate courts a charge exclusively upon the state treasury. They belong to the judicial department of the state. Const. art. 6, sec. 1. It is the duty of the state to provide for their compensation, but it has done so by making it a charge exclusively upon the county treasuries of their respective counties, and it has never been suggested that the law was unconstitutional. The fact that the judges of the district court of the county of Ramsey belong to the judicial department is no reason why the Legislature might not make the payment of a part of their salaries as a charge on the county."

See, also, City of Covington v. Menzies, Court of Appeals of Kentucky, 24 S. W. 242. The court in that case considered the act of the Legislature authorizing the city of Covington to pay the chancellor of Kenton county an additional compensation to the salary paid by the state, and held the act not unconstitutional.

The Supreme Court of Missouri, in the case of State ex rel. Hawes, Police Commissioner, v. Mason, City Auditor, 54 S. W. 524, considered an act of the Legislature which provided for police commissioners of the city of St. Louis to be appointed by the Governor, and which authorized and required that the mayor of said city appoint and employ a permanent police force for said city. The act required the city to support the police department out of its revenue. In the body of the opinion, the court said, quoting from State v. Field, 119 Mo. 614, 24 S. W. 752:

"We deem it within the power of the Legislature to impose a tax upon a particular subdivision or municipality of the state when, in its judgment, it is for the benefit of that locality as well as the state at large. * * *

In support of this proposition the follows authorities are cited: State v. St. Louis County Court, 34 Mo. 546; St. Louis v. Shields, 52 Mo. 351; State v. Holladay, 70 Mo. 137; In re Apportionment Tax, 78 Mo. 596; Cooley, Tax'n (2d) 142, 155, 166, 167; Gordon v. Cornes, 47 N. Y. 608. The court held that there was no objection to such act because it required the city to support the police department out of its revenue in preference to other equally necessary departments, since the state had the same powers over the city revenues that it had over its own.

The Supreme Court of Missouri also considered the legislative enactment providing for a court reporter and his salary to be paid by the cities having a population of over 100,000 inhabitants in the state of Missouri, in the case of Young v. City of Kansas City, 54 S. W. 535. In that case it was held that it was within the power of the Legislature to impose a tax upon a particular subdivision or municipality of the state when in its judgment it is for the benefit of that locality as well as the state at large and that it was competent for the Legislature to require the salary of an official of a court having jurisdiction in cases of felony to be paid out of the treasury of the city where by law such court was required to be held and to make

the same a charge upon the revenue of such city.

In the case of Salem Turnpke & Chelsea Bridge Corp. v. County of Essex, 100 Mass. 282, the Supreme Court of Massachusetts considered a statute which provided for taking and laying out the road and bridges of a turnpike corporation as a public highway upon the acceptance of the report of the commissioners to be appointed by the court, and empowering the commission to award damages to the corporation, and in what proportions the same should be paid by the counties and cities and towns which it crossed, and in what proportions and manner they should pay the expenses of maintaining the bridges. The constitutionality of said act was considered. In that case it was contended that the Legislature had no constitutional authority to pass an act of that character; that the act suspended the general laws by which the making and maintaining of highways were left to the counties, and which required that the counties, towns, and cities should maintain the highway within their limit, and that it compelled the county and towns and cities within the county to maintain highways in the towns and cities of another county. The court held that the Legislature had the right to exercise its discretion in the distribution of public burdens of this character. In the body of the opinion the court said, in speaking of the distribution of public burdens, as follows:

"The distribution is not and cannot be made with exact equality. When the burden is placed on counties or towns it is not distributed among them with exact equality. Much less is it equally distributed among the taxpayers. It can only approximate towards equality." City of Philadelphia v. Field, 58 Pa. 320; Thomas v. Leland, 24 Wend. (N. Y.) 65.

In the case of City of Chicago v. Knobel, 83 N. E. 459, the Supreme Court of Illinois said:

"Revenues of a county are not the property of the county in the sense in which the revenue of a private person or corporation is regarded. The whole state has an interest in the revenue of a county, and for the public good the Legislature must have the power to direct its application."

The court in that case discussed the constitutionality of the law which provided that the venires for jurors for the municipal court of the city of Chicago should be served by the sheriff of Cook county, wherein the city of Chicago was situated, at the expense of Cook county, and that the jury fees should be paid by the city, thereby apportioning the expenses between said city and said county. The court held the act constitutional; that counties were mere political divisions of the state as a convenient mode of exercising the political, executive, and judicial powers of the state; and that they were created to perform public, and not private, functions. The court also held as follows:

Syllabus 6. "Const., art. 2, sec. 2, providing that no person shall be deprived of his property, etc., without due process of law, does not apply to the revenues of a county, since a county is a public corporation existing only for public purposes, and its revenues, in the absence of constitutional restriction, are subject to legislative control; and hence that section is not violated by Municipal Court Act of Chicago, section 25 (Hurd's Rev. St. 1905, p. 644, c. 37), providing that the jurors for that court shall be provided by the jury commissioners of Cook county, that the venires for such jurors shall be served by the sheriff at the expense of the county, and that the jury fees shall be paid by the city, thereby apportioning the expenses between the city and county."

The Supreme Court of Washington also considered a similar provision in the case of In re Salary of Superior Court Judges, 144 P. 929. The act under consideration in that case required the board of county commissioners in the county in which the court was located to increase the salaries of the superior court judges from $3,000 to $4,000 per annum, and authorized such increase to be paid by the county in which the court was located.

In the case of St. Hedwig's Industrial School for Girls v. Cook County, 289 Ill. 432, 124 N. E. 629, the Supreme Court of Illinois on page 632, of N. E. Reporter, said:

"The General Assembly may compel taxation by a municipal corporation for the performance of duties as an agency of the state government and to discharge duties and obligations properly resting upon it. It may compel a municipal corporation to perform duties which relate to the general welfare and security of the state, although the performance of the duty results in a tax or in creating a debt to be paid by taxation. It may require a county to build a courthouse, a jail, or a bridge, to support paupers, or to establish necessary regulations for public health and safety, and may require the county to pay the expense of summoning jurors and the expense of jury commissioners, and may require a municipal corporation to pay its proportionate cost of the change of grades in public roads and railroads. People v. County of

Williamson, 286 Ill. 44, 121 N. E. 157; Trustees v. Lincoln Park Com'rs, 282 Ill. 348, 118 N. E. 746; Chicago, Milwaukee & St. Paul Railway Co. v. Lake County, 287 Ill. 337, 122 N. E. 526. The maintenance and care of dependent children falls within the same class of duties and obligations as the support of paupers, the building and maintaining of jails, and the administration of justice. Counties are but local subdivisions of the state, clothed with corporate powers of a governmental character. A county, in such case, is a mere agent of the state, and the power of the General Assembly is paramount and complete over the property of citizens in such political subdivisions as to all provisions for the exercise of the police power."

Cooley, Taxation (4th Ed.) vol. 1, p. 914, states:

"* * * It is generally held that the state has no power to itself impose a tax, or to require a local subdivision to impose a tax, for purely local purposes. Speaking generally, it may be affirmed that the rule in most states is that in any case in which compulsory taxation is found necessary, in order to compel a municipal corporation or political division of the state (1) to perform properly and justly any of its duties as an agency in state government, or (2) to fulfill any obligation legally or equitably resting upon it in consequence of any corporate action, the state has ample power to direct and levy such compulsory taxation, and the people to be taxed have no absolute right to a voice in determining whether it shall be levied, except as they may be heard through their representatives in the Legislature of the state. On the other hand, the general rule is that if the purpose of a tax is local rather than general, the Legislature cannot compel a municipality, county or the like, to levy such a tax nor can the Legislature itself levy such a tax; and that it is within the power of the Legislature to impose a tax upon a particular subdivision or municipality of the state when in its judgment it is for the benefit of that locality as well as that of the state at large. The general rule does not prevent the Legislature from imposing taxes, local in their character, against a municipal corporation or its inhabitants. if required for the general good of the state. since such taxes are not merely and only for corporate purposes."

Counsel for plaintiffs cite as authority for their contentions the following cases: Cotham v. Coffman (Ark.) 163 S. W. 1183; Colbert v. Bond (Tenn.) 75 S. W. 1063.

We have examined these cases. They are distinguishable by reason of statutory and constitutional provisions. In the Arkansas case, the court said:

"Act approved March 23, 1911 (Acts 1911, p. 78), creating the Eighteenth judicial circuit, section 4, declaring that the judge thereof shall receive the same salary as provided by law for circuit judges throughout the state, provided though that two-thirds of such salary shall be paid by Garland county by order of the county court and the other third by the state, is unconstitutional, since a circuit judge is a state officer, and under Const. art. 7, secs. 28, 30, defining the powers and duties of the county court, the Legislature cannot impose upon or delegate to the county court the power to levy taxes, and make an appropriation for a state purpose, and besides, as no other county in the state is made to bear the salary of a circuit judge, it violates Const. art. 16, sec. 5, providing for uniformity of taxation."

The constitutional provision, section 5, art. 16, provides:

"All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the state."

Section 20, article 10, of our Constitution provides:

"The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes."

Section 28, art. 7, of the Constitution of Arkansas is as follows:

"The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case, that may be necessary to the internal improvement and local concerns of the respective counties."

It is to be observed that under section 20 of article 10 of the Oklahoma Constitution, the power is reserved in the Legislature to confer upon the county the power to assess and collect taxes for the purposes of the county, and that the Legislature has the power to define and designate the purpose for which it authorized the county to assess and levy taxes. Under section 28 of article 7, of Arkansas Constitution, this right to levy and collect taxes is not reserved in the Legislature, but the Constitution expressly conferred upon the county court exclusive jurisdiction in all matters relating to county taxes, etc., and the disbursement of money for county purposes.

Our Constitution does not in any manner attempt to define the difference between a state purpose and a local or county purpose, but places that matter in the Legislature.

The Tennessee case is likewise distinguishable. The legislative act in that case related to the increase of the salary of the judges of the circuit, chancery, and criminal courts. The act provided that the county courts in counties affected by the act should appropriate for such purposes to such judges an additional salary of not more than $1,000 for any one year. In fact, no definite salary was ever created by such act. The Supreme Court of Tennessee very appropriately held, under their statutory and constitutional provisions, that the salary of those state officers elected and commissioned for state purposes must be wholly and entirely fixed by the General Assembly, and that no authority could be delegated to any county court of the state authorized to increase or make any appropriation within its discretion out of the county revenues for the payment of said salaries. In other words, it was the duty of the Legislature to fix the salary and it could not delegate that power to any other body. A careful study of these cases convinces us that they do not sustain the contentions of plaintiff.

We consider the act creating the superior courts of this state a valid legislative enactment. The question of placing the burden of maintaining this court located in a county having the requisite population is a matter peculiarly and exclusively within the wisdom of the Legislature. The Legislature had the right to consider the benefits accruing to inhabitants of the specific counties where said courts are maintained in an endeavor to equitably apportion the common burden of taxation in the state. Unquestionably, the court exercises both state and county functions. The creating of such a court blends the interests of the county in this institution, and at the same time it exercises judicial functions which are not exclusively confined to a local purpose, but which, on the contrary, affect the state at large. The judicial function is public and general. The forum is open alike to the citizens of the county and state, to present, within limitations, their redressible wrongs. The Legislature in determining the creation of superior courts had the right to consider the possibility of creating more important business centers, due to the location of such court, and the possibility of stimulating the activities of such county whereby revenue would be added to the county. Unquestionably, citizens of such a county would derive some benefit at least beyond that which was derived by the citizens of the state in general. The distribution of and apportionment of such tax properly belongs to that part of the government which is authorized to exercise it. Kirby v. Shaw, 19 Pa. 258. As we view the question presented, we find no constitutional inhibition in the creating of the superior court under the Act of 1915, section 3102, C. O. S. 1921. We are not concerned with the expediency of the act in question, nor the quantum of interest which invoked its creation. The Legislature, if it desires, can by appropriate action abolish the same; if it sees fit, it can apportion these charges against the state. These questions are not material for our consideration. These matters are purely legislative, and nothing has been presented to this court showing the invidious or arbitrary character of the provisions of the act in question, or that the same offends or contravenes any provision of our state Constitution.

The judgment of the trial court is affirmed in that part holding that section 3102, supra, is constitutional, but reversed as to that part construing section 3111, supra, unconstitutional.

ANDREWS, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur. RILEY, C. J., CULLISON, V. C. J., and SWINDALL, J., dissent.